# THADEOUS DZIUK AND OTHERS v. DAVID LOEHRER.

123 N. W. (2d) 86.

July 26, 1963—No. 38,807.

154

*John (Jack) M. Miller*, for appellants.

*Quinlivan, Quinlivan & Williams* and *O. C. Adamson II*, for respondent.

SHERAN, JUSTICE.

The appeal is by three personal injury claimants from a judgment of the district court entered in their favor following additur as specified in a conditional order denying a new trial on the issue of damages only.

Actions were instituted by Thadeous Dziuk, Elaine Dziuk, his wife, and their two children, Terri Ann Dziuk, 7, and Vicki Lee Dziuk, 6, for personal injuries allegedly sustained as a result of an automobile accident which occurred on December 18, 1960, at the intersection of 8th Avenue Southeast and 10th Street in the city of St. Cloud. At the

conclusion of the trial, special interrogatories were submitted to the jury, which found that the accident was proximately caused by the negligence of David Loehrer; that plaintiff Thadeous Dziuk was also negligent but that his negligence was not a proximate cause of the accident. The amount of general damages sustained by Thadeous Dziuk, Elaine Dziuk, and Vicki Lee Dziuk was fixed at "none," and the general damage sustained by Terri Ann Dziuk was fixed at $200. The jury found that Thadeous Dziuk sustained no wage loss and that Elaine Dziuk sustained a wage loss in the amount of $125.40. The reasonable medical expense incurred by all of the plaintiffs was set at $600.

A motion was made in behalf of each of the plaintiffs for an order setting aside the verdict in respect to damages and granting each plaintiff a new trial on that issue. The trial court, after reciting the answers to the special interrogatories, found as facts:

"1. That plaintiff Thadeous Dziuk did sustain general damages in the just and reasonable amount of $500.

"2. That plaintiff Elaine Dziuk did sustain general damages in the just and reasonable amount of $250, although her testimony was impeached to some extent."

Plaintiffs' motion was "granted unless defendants within thirty (30) days from the date hereof by written acceptance filed with the clerk of this court agree to an additur of $500.00 general damages to Thadeous Dziuk and $250.00 general damages to Elaine Dziuk." The condition was accepted by defendant and judgment was entered in favor of plaintiffs in the amounts specified.

The legal issues as stated by plaintiffs are as follows:

(1) "Was the jury award of damages for Terri Ann Dziuk adequate?"

(2) "Were the awards of damages for Elaine Dziuk and Thadeous Dziuk adequate after additur?"

(3) "Can the jury and trial court disregard unimpeached and uncontradicted testimony on damages that is not inherently improbable?"

(4) "Were the special verdicts on damages so perverse, inadequate or contrary to the evidence as to require a new trial to the exclusion of additur?"

(5) "In a personal injury action involving multiple plaintiffs, can an order granting a new trial to one plaintiff be conditioned on additur ordered for other plaintiffs?"

Evaluation of the awards of damage both before and after additur makes necessary a review of the evidence concerning this phase of the cases. For convenience, the evidence with respect to each claim will be considered separately.

### ■ TERRI ANN DZIUK.

Terri Ann's parents testified that she was unconscious at the accident scene. She was removed by ambulance personnel, who were not called to testify. Dr. Robert T. Peterson examined her at the hospital and noted that "she had a three-inch long scalp laceration on her right posterior scalp area, and that she was upset, answered questions vaguely." She was hospitalized until December 21, 1960. The hospital record was not offered in evidence and we have no disinterested testimony as to her progress there. She returned to school after the Christmas vacation and experienced headaches on several occasions. Dr. Peterson saw her on December 27, on January 3, 1961, and on January 10, when "she seemed to be doing quite well." He observed Terri Ann again on February 13, 1961, and at that time "she was complaining of some visual difficulties." He said, "I think she had some little double vision with spots in front of her eyes, and so on." She was referred to an eye specialist by Dr. Peterson. No testimony from such specialist was offered and we do not know whether this recommendation was followed. Upon cross-examination Dr. Peterson characterized the injury of Terri Ann as "a mild concussion."

Terri Ann Dziuk testified that her first recollection after the accident was when she "woke up in the hospital." When asked with respect to her eyes, she said, "I just couldn't focus my eyes just a little bit, but nothing else. I didn't see double or anything—nothing real bad." Following the accident she experienced headaches.

Dr. Harold H. Noran of the Minneapolis Clinic of Psychiatry and Neurology, called by plaintiff, testified that he had examined Terri Ann on June 30, September 1, and November 27, 1961. Neurological examination was negative. An electroencephalogram reading was made from

which he concluded that she had "a cerebral disrhythm or abnormal electro-encephalogram." He said, "[T]his child is normal neurological-ly but she has what would be termed a cerebral disrhythm or abnormal electro-encephalogram. That is as far as I could go." He testified, "Right now in my opinion she is clinically well and isn't having any trouble now." Upon cross-examination Dr. Noran conceded that in some cases an abnormal electroencephalogram reading of the type here involved might be found in a patient who had not sustained a head injury. He also agreed that electroencephalogram readings made over a period of time following a head injury usually tend to show a diminishing degree of abnormality in cases where trauma is the cause of the observed dis-rhythm. He stated this opinion:

"Q.   You think with a reasonable degree of certainty that she is going to be all right?

"A.   Yes, sir."

While reference was made to "traumatic convulsive seizures" as a future possibility, the trial court instructed the jury:

"Dr. Noran testified relative to Terri Ann Dziuk's condition and gave certain testimony relative to the future or permanent injuries, all of which was a guess, according to his testimony. Therefore, you are to dis-regard that part of his testimony because it can't be of any assistance to you."

No exception was made to the part of the charge that related to the testimony of Dr. Noran above quoted.

The jury found that Terri Ann Dziuk sustained general damages in the amount of $200. This allowance was extremely modest. The trial judge, however, has had opportunity to view the situation personally. He apparently concluded that the amount awarded represented fair compensation for the injuries received; otherwise, the special verdict on this issue would not have been accepted without additur. We cannot say his determination represents an abuse of discretion.

■   (a)   THADEOUS DZIUK.

Immediately after the impact Thadeous Dziuk was unaware of having sustained any injury. As to the following day, he said, "My shoulders

were stiff and I had bruises on my face and had a black eye, * * *." Although his hands "started to blister and break out" on December 19, he acknowledged that he had suffered from this condition before the accident and testified:

"Q.   The condition of your hand following the accident was the result of the accident?

"A.   I don't know whether it was or not."

Mr. Dziuk was examined by Dr. Peterson on December 19, 1960, who described his initial findings as follows:

"Well, he had a swollen and painful right maxillary area, the area on the face below the right eye, pain and discomfort left anterior left area—left anterior rib area, large contusion right elbow, bruises and contusions on the left upper arm area * * *."

X-rays were negative. Observation by Dr. Peterson on December 21 and 27, 1960, January 10, February 13, and April 25, 1961, reflected that his physical condition improved except for the dermatitis of the hands. On June 6, 1961, he was placed on tranquilizing medication because of complaints of extreme nervousness. Because of these same complaints he was hospitalized from June 8 to June 16 and was referred for examination to Dr. John P. McNamara of the Mental Health Center in St. Cloud. Dr. Peterson continued to treat Mr. Dziuk, however, seeing him on June 23, July 10, July 21, August 7, August 21, September 11, November 28, and, for the last time, on December 29, 1961. In an attempt to establish causal relationship between Mr. Dziuk's complaints and the accident on December 18, 1960, the following question was asked and answer given:

"Q.   * * * Now, what diagnosis did you make independent of any outside source at all as to his ailments during that period, over those months?

"A.   Well, I hospitalized Mr. Dziuk for a neurosis long before Dr. McNamara saw him."

Dr. McNamara examined Mr. Dziuk on June 18, 1961, and again on April 2, 1962. He was asked:

"Q. Within a reasonable degree of medical certainty could you tell us what the diagnosis was?

"A. In June of '61 I was quite certain we were dealing with a traumatic neurosis. In my last interview I felt the original diagnosis had not been basically changed even though he has responded better than some people do.

\* \* \* \* \*

"Q. Can you tell us whether there is any causal connection between the accident we are talking about here and the traumatic neurosis that you found?

"A. From the history and my clinical information I feel the cause was the trauma in the accident.

\* \* \* \* \*

"Q. And your history and the talks you had with Mr. Dziuk indicated that before this accident he was neurotic?

"A. I have speculated this is a possibility, yes, sir."

Dr. McNamara's recommendation was that Mr. Dziuk return to work.

Dziuk testified that he did not return to work following the accident until Christmas Day. As of that time he said, "Things were going along good outside of the dermatitis. Everything was cleared up and I felt pretty good." In February, however, the noise in the kitchen at the reformatory where he was working started bothering him and "every time a pot or pan would drop I would go up in the air \* \* \*." He was offered a transfer of employment from the reformatory kitchen to a cell house where prisoners are incarcerated. At first his nervousness was relieved; then he began to experience dizzy spells when working in the upper galleries of the cell block, said to be 35 or 40 feet above the general level of the floor. At first this dizziness occurred only when he was working at heights, but as time progressed, he noted that his "ears were ringing all of the time and I felt that my head was blowed full of air." It was at this stage that Dr. Peterson cleaned the wax out of his ears in an effort to give him relief. This treatment did not improve his situation and in June he reported to his superiors that he was sick and unable to continue. He did not work from June 8, 1961, until August 9 of that year. Since that time his condition has improved and at the trial he

testified: "I have no complaints now whatsoever." Mr. Dziuk testified that he had never experienced sensations of this character before the accident.

If the evidence is such as to require a finding that the accident caused physical disability preventing Dziuk's pursuit of his occupational duties between December 18 and December 25, 1960, and between June 8 and August 9, 1961, or both, then finding of no wage loss cannot be sustained. This depends on whether the evidence compels a finding that the ailments noted on December 19 were caused by the December 18 accident and were of such a kind as to be disabling and whether the evidence compels the conclusion that plaintiff did in fact sustain a neurosis as a result of the December 18 trauma preventing working during the period from June 8, 1961, to August 9 of that year. We find nothing in the record to support a finding of causal relationship between the accident and the dermatitis. Although Dziuk testified that he was stiff and sore; that he had a black eye; and that he was bruised about his body generally, we find no clear evidence in the record, expert or otherwise, to compel a finding that these injuries prevented him from carrying out the duties of his employment during the week following the accident. On the other hand, we do have the testimony of Dr. Peterson that Dziuk was unable to work from June 8, 1961, to August 9 of that year because of the neurosis with which he was then contending. The answer of Dr. Peterson to the question on causal relationship between the accident of December 18, 1960, and the "traumatic neurosis" was, at best, equivocal. The answer of Dr. McNamara on this point, however, was categorical. His opportunity to observe the patient during the time in question, it must be noted, was extremely limited. He saw him for only one hour on June 18, 1961. Except for such clinical findings as he made on that occasion and a further check on April 2, 1962, he was dependent for his opinion of causal relationship upon a history afforded him by others. He acknowledged that the *nervousness* could well have antedated the accident. While we feel that the testimony of Dr. McNamara would have been adequate to support a finding that the traumatic neurosis was causally related to the December 18 accident, we feel that it was not so free

of doubt as to compel a finding of causal relationship in an area so difficult to evaluate scientifically as that presented by a traumatic neurosis claim.

(b)  ELAINE DZIUK.

Immediately after the collision Mrs. Dziuk was engrossed with her children, particularly Terri Ann. Mrs. Dziuk went with her husband and their younger daughter, Vicki, to their home, following which she went to the hospital where she was examined by Dr. Peterson. She testified that a friend helped her walk and that she was placed in a wheelchair at the hospital, but conceded that there was nothing wrong with her legs to prevent her from walking at that time. She was released without confinement. On the next day she went with her husband to the office of Dr. Peterson where she was examined. Mrs. Dziuk described her condition in these words:

"Q.  Where were your aches?

"A.  Well, in the lower part of my back. My back ached and I had a bruise on my leg and across my chest and arms and my elbow, and I felt real rough."

During the few days following the accident, she testified, she "couldn't do anything at all." She was not confined to her bed and was able to go to the hospital to see her daughter. For 4 days following the accident her mother came to the home and helped her "because I couldn't do anything." Thereafter she received some part-time assistance on occasion.

She went to see a chiropractor, Dr. Nelson, "a couple of weeks after the accident," and "he gave me several treatments on my back." Later in the testimony she indicated chiropractic treatments were given in February. She testified that in March before the accident (it is not clear whether this was in 1959 or 1960): "I was carrying Vicki and I missed a step and fell and after that I had back trouble, but I had some treatments from Dr. Nelson" after which she "felt real good." As of the time of the trial she said, "I feel fine, but it [the pain in the lower back and legs] comes and goes." Mrs. Dziuk had been working at a toy store and it was stipulated that she lost $125.40 in wages during the 2-week period subsequent to December 18, 1960. In addition, this plaintiff claimed that during the months of January and February she would, except for

the accident, have sold on a commission basis for the Hope Chest Company, where her earnings would approximate $182 a month. Her testimony on this aspect of the case was, at best, vague.

Dr. Peterson testified with respect to his examination of Mrs. Dziuk that "she complained of bruises and contusions in the anterior left rib area, the left flank area and left kidney area." She also complained of backache and neck stiffness. X-rays were negative. She was further examined by Dr. Peterson on December 19, December 21, and December 27, 1960, and on January 3 and January 10, 1961. On February 13, 1961, the doctor noted that she had been laid up with a sore lower back and was then having pain radiating down the left leg. Her reflexes appeared normal at that time. On March 11, 1961, she was complaining of low backache. During the months of March, April, May, June, August, and September 1961 she was observed by Dr. Peterson for conditions unrelated to the accident but he noted during that time that the condition of her back was "up and down." He said, "At times her back felt reasonably well and then again it would bother her a good deal." She was last seen by the doctor on February 22, 1962. At that time she was complaining of pain in her low back and "leg ache." Her reflexes were good and her back flexion was quite good, according to Dr. Peterson. The following question was asked and answer given:

"Q.  * * * Taking into consideration your examination and findings are you able to give an opinion as to reasonable certainty as to the causal connection between this accident we have been talking about and her back condition?

"A.   Yes. I think her injuries are related to the accident."

The jury by answers to special interrogatories found that Elaine Dziuk had sustained no general damages and fixed her wage loss in the amount of $125.40 in conformity with a stipulation between the parties. Since the amount of the wage loss was fixed by agreement the jury was not called upon to make a determination of the relationship between this wage loss and the injuries sustained by her on December 18. Other than the complaint of "low back" pain and the radiating leg pain, presumably related to the low back abnormality, there was

no such description of pain and suffering as would permit an award of more than nominal damages by the jury on this account. If the low back pain and collateral complaints were caused by the accident, an allowance of general damages in some substantial amount should have been made. Although not free from doubt on this point, we conclude that the award of $250 as general damages for Mrs. Dziuk should be affirmed because the evidence of causal relationship between her complaints and the December 18 collision does not compel an affirmative conclusion as to such relationship. While we do have the testimony of Dr. Peterson that her injuries were related to the accident, his answer was based entirely upon his examination and findings, and the history of the back injury occurring the spring prior to the accident was not directed to his attention. Further, Dr. Nelson, the chiropractor who treated Mrs. Dziuk both before and after the collision with which we are now concerned, was not called as a witness by the plaintiff. Under these circumstances we feel that the jury was free to conclude, as it apparently did, that plaintiff had failed to sustain the burden of proof as to causal relationship. The allowance of $250 as general damages to Elaine Dziuk by the trial court, in our opinion, relieves any unfairness which might otherwise result from the original disallowance of general damages.

(c)   VICKI LEE DZIUK.

Vicki Lee Dziuk was 6 years old at the time of the trial. She had been sitting with her sister, Terri Ann, in the back seat before the collision and was observed standing in the back seat immediately afterwards. She was taken home immediately after the accident and so far as the record shows received no medical attention. Her mother testified that at the time of the accident she got a bump on her head and that since the accident "she has been deathly afraid to ride in a car." In our opinion this evidence is so vague that a finding of more than nominal damages would not be warranted and this court will not reverse the decision of the lower court where nominal damages only are involved. In any event, error as to this case is not assigned. See, Minn. Digest, Appeal and Error, Key No. 1171(6).

■   The medical opinions expressed in these actions as to the possi-

bility of seizures as applied to Terri Ann; the causal relationship between the accident and the traumatic neurosis as applied to Mr. Dziuk; and the connection between low back complaints and the collision as applied to Mrs. Dziuk were not of such a nature as to compel acceptance by the jury.[1]

■ Plaintiffs contend that the answers to the special interrogatories returned by the jury were perverse because:

(a) Elaine Dziuk and Thadeous Dziuk were awarded medical expenses without allowance for pain and suffering.

(b) The evidence compels a finding of wage loss with respect to Mr. Dziuk and the jury concluded that he had none.

(c) The allowance of $125.40 as a wage loss to Mrs. Dziuk is inconsistent with a finding of no general damages in her case.

(d) The $600 allowed for medical expenses cannot be explained rationally.

There is authority for the proposition that a verdict awarding medical expense but nothing for pain and suffering is inadequate and invalid.[2] This court has granted a new trial where there was a failure to award damages for severe bumps, bruises, and contusions.[3] If the answers to the special interrogatories were being considered without benefit of the additional amounts allowed by the trial court in the cases of Mr. and Mrs. Dziuk, we might well accept plaintiffs' position. In our decisions, however, the propriety of the trial court's order denying a new trial on the issue of damages has been appraised in light of the additional sums added by virtue of the conditional order of the court.[4] We have examined the record in the case to see whether the answers of the jury could have been influenced by factors interfering with plaintiffs' rights to a fair trial. We find nothing indicating a denial or infringement of

---

[1]See, Krueger v. Knutson, 261 Minn. 144, 111 N. W. (2d) 526, and authorities there cited.

[2]See, Annotation, 20 A. L. R. (2d) 276.

[3]Krueger v. Henschke, 210 Minn. 307, 298 N. W. 44.

[4]See, Seydel v. Reuber, 254 Minn. 168, 94 N. W. (2d) 265; Genzel v. Halvorson, 248 Minn. 527, 80 N. W. (2d) 854; Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248.

these rights. The instructions given by the trial court were accepted by the parties without significant exception. Although the evidence was such as to sustain substantial awards for the plaintiffs other than Vicki, the jury, having had opportunity to observe the injured claimants firsthand, apparently concluded that the loss attributable to the collision was not of a serious character. A stipulated wage loss does not, we feel, carry a necessary implication of general damages because the stipulation does not involve an agreement that the earnings were prevented by pain and suffering. While we cannot determine the exact basis for the allowance of medical expenses in the amount of $600, it was adequate to cover so much of the expense incurred as was reasonably required to cure and relieve the injuries sustained if we assume, as the jury probably found:

(a) That the hospitalization of Thadeous Dziuk from June 8 to August 9, 1961, and the treatment he received for dermatitis and traumatic neurosis were not accident connected;

(b) That the expense incurred for treatment of Mrs. Dziuk's complaints was not necessitated by conditions resulting from the collision; and

(c) That some, at least, of Dr. Noran's bill was attributable to preparation for trial rather than treatment of a compensable injury.

Since the amount allowed was more than adequate to reimburse plaintiff Thadeous Dziuk for the medical and hospital expenses reasonably required in the treatment of conditions clearly connected with the accident, reversal for this reason is not indicated.

■ Our principal concern in reviewing this appeal arises from the fact that the order of the trial court directed a new trial of all of the four consolidated actions unless the amounts allowed to two of the plaintiffs were increased. If, in the opinion of the court, the damages allowed to Terri Ann were inadequate, she was entitled to a new trial and this right could not be defeated by addition to the award made to Mr. and Mrs. Dziuk on account of their claim. On the other hand, if the trial court, exercising its discretion, concluded that the allowance to Terri Ann made by the jury was adequate and that she was not entitled to a new trial on the issue of damages, the motion in her case should have

been denied. In the absence of specific finding on this point, we have examined the proceedings and the order carefully and have concluded that the trial court must have determined that the $200 allowed was adequate under the circumstances. The finding of the jury on this point is incorporated in the order which adds $250 for Elaine Dziuk and $500 for Thadeous Dziuk as general damages. Implicitly, the fact that the trial judge did not add to the Terri Ann award implies acceptance of it as being reasonable. So considered, the person offended by the circumstance that a new trial might have resulted in the Terri Ann case if additur had not been made was defendant. Since additur was forthcoming and defendant makes no complaint, the error in this regard was without prejudice.

Affirmed.