Bruce B. BEBEAU, Respondent,

v.

John MART, et al., Respondents,

Lehigh Valley Railroad Co., et al., Defendants.

LEHIGH VALLEY RAILROAD COMPANY, defendant and third party plaintiff, Appellant,

v.

MANNIX CONSTRUCTION, INC., Maintenance of Way Division, third party defendant, Respondent.

No. 51339.

Supreme Court of Minnesota.

Sept. 25, 1981.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland and Charles H. Becker, Minneapolis, for appellant.

Babcock, Locher, Neilson &' Mannella, Robert F. Mannella .and Gary T. LaFleur, Anoka, for Bebeau.

Bassford, Heckt, Lockhart & Mullin, Greer E. Lockhart and Charles E. Lundberg, Minneapolis, for Mart, et al.

Mahoney, Dougherty & Mahoney, Kenneth Gleason and Richard P. Mahoney, Minneapolis, for Mannix.

## OPINION

TODD, Justice.

Bruce B. Bebeau (Bebeau), employed by Mannix Construction, Inc. (Mannix), to assist in operating equipment leased to Lehigh Valley Railroad (Lehigh), brought suit to recover damages for injuries suffered while repairing railroad track beds belonging to Lehigh. At trial, Mannix obtained a ruling from the trial court that its contractual agreement to indemnify Lehigh was void as against public policy because Lehigh had an absolute duty imposed by federal law to provide for the protection of railroad employees. The trial court instructed the jury, without proper objection from Lehigh's counsel, that Bebeau's coworkers who were also employed by Mannix were agents of Lehigh and that the coworkers' negligence, if any, was attributable to Lehigh. The jury found Lehigh negligent and returned a verdict of $639,000 for Bebeau's damages, which, pursuant to a post-trial motion, was subsequently remitted to $250,-000. On appeal, Lehigh seeks indemnity from Mannix, and Bebeau cross-appeals from the trial court's order reducing his damages award. We affirm the determination of Lehigh's negligence; we decline to grant indemnity to Lehigh under its contract with Mannix; and we reverse the trial court's order granting the remittitur and

remand the matter to the trial court for a new trial on the question of damages alone.

Mannix owns, operates, and leases to various railroads for fixed periods of time shoulder ballast cleaning (SBC) machines designed to clean and redistribute the sand and gravel (ballast) comprising the railroad bed. In cleaning a roadbed, the SBC travels along a stretch of track at approximately 1½ miles an hour, picking up loose gravel, separating the large rock from the smaller rock, and then redistributing it in an even fashion along the roadbed. The approximately 190-foot long SBC consists of two self-propelled cars connected with conventional train coupling which propel a third "carryall" or ordinary pick-up truck converted and mounted on railroad wheels for use on a railroad track as a storage vehicle. The "front" car, which is powered with two diesel engines and is essentially responsible for the motion of the SBC, performs the function of collecting or unearthing the loose ballast, while the "back" car screens the collected ballast and redistributes it along the roadbed. It is railroad policy that workers sound a warning horn prior to starting the diesel engines to notify and alert employees of the SBC's pending movement.

Mannix originally employed Bebeau to work in a shop in Minnesota but then reassigned him to work as an SBC operator. Pursuant to a lease agreement between Mannix and Lehigh, Bebeau and his fellow employees, Ben Whitten (Whitten) and John Mart (Mart), arrived at Lehigh's railroad property in Pennsylvania on the morning of December 11, 1974, and prepared to move the SBC along the track to the job site. After receiving clearance from the railroad persons in charge, the three men traveled to the job site, sounding the air horn to warn others that the SBC was in motion. LeRoy Michaelis, a supervisor for Mannix, and two railroad personnel appeared at the site, and Michaelis directed two men to operate the SBC and the third man to straighten the coverted parts truck; Mart and Whitten assumed the task of operating the SBC which left Bebeau to clean the parts truck.

While in the process of cleaning the parts truck, Bebeau descended from the truck twice, once while the SBC was moving and the second time while it was stationary; on both trips, he saw Michaelis and several railroad employees standing by the chutes located in the middle of the rearmost car. On his descent from the converted parts truck with two empty gas cans that he had decided to strap to the truck's front bumper, Bebeau also saw Whitten standing by the chutes. In order to tie the cans, Bebeau pushed himself upon the waist-high bumper, balanced his body against the bumper, and strapped the cans with wire. Bebeau then began to ease himself down from the bumper, completely unaware that the SBC was slowly moving forward. During his descent, Bebeau felt pressure on his left foot caused by the rolling of the steel high railer wheel over his toes, his foot, and then his ankle. He was eventually dragged under the wheel as it also rolled over his right ankle. He later testified that he never heard the air horn warning him that the SBC was about to move, and no party offered any testimony that the SBC operator did in fact sound the horn.

Bebeau pulled himself away from the track and dragged his body off to the side. He tried to attract the attention of other crew members once he realized that he had been injured. Blood gushed from Bebeau's trousers, and the pain was so great that he begged Whitten to knock him out. Bebeau was later taken by ambulance to a hospital where he was examined, admitted, and twice operated upon for the insertion of a pin in his knee and ankle.

Bebeau was released from the Pennsylvania hospital on December 24, 1974, and flew back to Minnesota with his parents. Three days later, he entered North Memorial Hospital in Minneapolis for treatment. Bebeau was confined to a wheelchair for 2 months and had leg casts for 5 months.

Bebeau's injuries included severe crushing arterial damage to his left thigh and lower left leg with comminuted compound fractures of the tibia and fibula; extensive

skin lacerations and scarring; nerve injury; and a fracture of the medial malleous of the left ankle. As a result of the accident, Bebeau's left leg became shorter than his right leg. The treating orthopedic surgeon rated Bebeau as having a 10-percent permanent partial disability of his right lower extremity, otherwise stated as a 15-percent disability of the foot and ankle, and a 50-percent permanent partial disability of the left lower extremity as a whole.

Bebeau, who was 20 years old at the time of the injury, married in 1975 and was unable to commence employment until June or July 1976 due to the intense pain which he likened to a toothache, worsening as the dentist drills. At trial in January 1980, Bebeau was still experiencing throbbing in his legs and testified that he cannot swim anymore; that bowling is difficult; that he is embarrassed by his leg full of scars; that after an 8-hour day at work, he is unable to work at home; and that if he avoids any activity on weekends, his work week is easier.

The medical testimony at trial indicated that Bebeau will have indefinite pain at least in his left lower extremity and that future medical treatment will quite likely be required in the nature of a heel cord operation, involving 3 or 4 days in the hospital and 6 weeks in a cast. It is also reasonably certain that Bebeau will require an arthroscopy, an X-ray procedure to examine Bebeau's knee internally to determine whether future medical attention is required.

Expert testimony disclosed that Bebeau's past wage loss at the time of trial was approximately $48,000, and that the present value of his loss of future earnings ranged from $73,585 to a figure computed by multiplying $803,019 times the jury's estimate of Bebeau's percent impairment. Bebeau's past medical expenses amounted to $9,000, and the trial court evidence disclosed that the present value of future medical expenses was $30,000.

Shortly after the trial began, the trial court granted, over Lehigh's general objection, Bebeau's motion to dismiss his claims against defendants Mart and Whitten personally; the trial court also denied Lehigh's motion to amend its cross-claim for contribution against Mart and Whitten. At no time did counsel for Lehigh request any special verdict questions concerning the negligence of Mart and Whitten. Near the close of the testimony, the trial court also dismissed Mannix on the ground that Lehigh had an absolute statutory duty to protect its employees and that the indemnity provision between Lehigh and Mannix was therefore void as against public policy.

After deliberation, the jury returned its verdict, finding that Bebeau was an employee of Lehigh at the time of the accident; that Bebeau was not negligent; that Lehigh was 100-percent negligent and that such negligence caused Bebeau's injuries; and that Bebeau's damages amounted to $639,000. The trial court entered judgment in accordance with the proceedings at trial and later granted Lehigh's post-trial motion, remitting the jury verdict to $250,000 or, in the alternative, granting a new trial, but denied all other aspects of Lehigh's motion. Bebeau accepted the remittitur. Lehigh appeals from the trial court's order and judgment entered pursuant thereto, and Bebeau cross-appeals from the order of the remittitur.

The issues on appeal are:

1. Whether Lehigh is entitled to indemnity from Mannix pursuant to the terms of its lease agreement;

2. Whether the trial court erred in dismissing Mart, Whitten, and Mannix from this case; and

3. Whether the trial court was in error in granting a remittitur, and, if so, what is the proper remedy?

1. The parties have extensively briefed and argued the correctness of the trial court's decision that the indemnity agreement between Lehigh and Mannix was null and void because statutory provisions of the Federal Employers' Liability Act, 45 U.S.C. §§ 51, 55 (1980), and the Federal Safety Appliance Act, 45 U.S.C. § 11 (1980), create an absolute duty of liability in Lehigh.

We decline to discuss this issue since the contract between the parties clearly disposes of the indemnity claim under the facts of this case as submitted without objection. Paragraph 9 of the lease agreement provides:

Railway Company shall indemnify and save Mannix free and harmless from any and all claims and demands for loss or damage to property and for personal injury to and death of all employees, officers and agents of Railway Company when arising out of operation of said equipment while in the possession of Railroad Company, except when due to the negligence of Mannix or its employees. In the event of the joint or concurring negligence of both parties, responsibility shall be borne equally.

At the time of giving of the instructions, counsel approached the bench at the invitation of the judge, and the following dialogue occurred:

Mr. Manella [counsel for Bebeau]: The other thing, I move you instruct the jury, there is some ambiguity in mind, if you find that an operator other than Bruce Bebeau of the shoulder ballast cleaner was negligent, then you would find Lehigh Valley Railroad was negligent. I just think it is confusing here because in your instructions you are talking before a place, and I don't think it is clear to them what we are talking about here, and I request that instruction be given to them.

The Court: Any objection?

Mr. Doffing [counsel for Lehigh]: I am sure I do.

Mr. Mannella: That paragraph there. Or something that—well, I would prefer that wording, and I think it is ambiguous right now to them.

The Court: Well, I will give it them.

The court then proceeded to give the following additional instruction:

The fact I give you some additional instruction at the request of counsel should not in any way cause you to pick out this particular language or give it any greater or less import than any other instructions. All of instructions must be taken as a whole, and with that word of admonition, it has been suggested that to eliminate any possible confusion on the part of you members of the jury, if you do find that an operator of this shoulder ballast cleaner equipment other than Bruce Bebeau was negligent, that is, that under those circumstances, those operators would be acting in connection with the general over-all maintenance of the right-of-way of the railroad as agents of the railroad, then you would find, if you did find that such operators were negligent, then you would find that the Le High [sic] Valley Railroad was negligent. That's in connection with the issue of negligence or absence of negligence on the railroad's part.

Counsel for Lehigh failed to object when the trial court gave the jury this instruction.

In these instructions, the trial court effectively instructed the jury that Mart and Whitten were agents of Lehigh when they were operating the SBC, and that if they were negligent, Lehigh was negligent. At oral argument, counsel for Lehigh maintained that the discourse at the bench prior to the trial court's final instruction to the jury constituted its objection to the instruction. Such is not the case. After Bebeau's counsel made his general instruction requests of the court, counsel for Lehigh, in response to the court's question regarding any objection, merely stated: "I am sure I do." At that point, the trial court had not instructed the jury, and Lehigh's counsel had merely indicated his intent to object later in the proceedings. When the trial court so instructed the jury, counsel for Lehigh failed to object, thereby waiving any right to object on appeal. *See State v. Marchand*, 302 Minn. 510, 225 N.W.2d 537 (1975).

Paragraph 9 of the lease agreement is controlling, and there can be no recovery by Lehigh from Mannix because Mart and Whitten were agents of Lehigh and the jury found that Lehigh was negligent and that Bebeau was an employee of Lehigh.

2. Lehigh then alleged that the trial court erred by dismissing Bebeau's claims against Mart and Whitten because Lehigh intended to litigate the joint and several liability issue raised in its cross-claim of indemnity against Mart and Whitten.

█ Bebeau may voluntarily dismiss his claims against Mart and Whitten, with the trial court's approval, and Lehigh can appropriately object only if such dismissal of the codefendants dismisses Lehigh's claim for contribution from the codefendants. *See Anderson v. Gabrielson*, 267 Minn. 176, 126 N.W.2d 239 (1964). The dismissal here has no such effect on Lehigh.

Lehigh's cross-claim against Mart and Whitten for indemnification is factually defective. Lehigh should have framed its pleading in terms of a request for contribution based on the joint and several liability of the codefendants. In addition to this failure, Lehigh was less than articulate in stating its intention that its claim against Mart and Whitten should survive Bebeau's dismissal of his claims against Mart and Whitten. At trial, Lehigh merely requested clarification from the trial court that the dismissal related only to Mart and Whitten's individual liability to Bebeau, without enunciating its intention to continue to seek contribution from Mart and Whitten. Mart and Whitten's counsel ceased participation in the examination of witnesses once the trial court approved Bebeau's voluntary dismissal. Furthermore, Lehigh never requested that the trial court pose any special verdict questions to the jury regarding the existence of or the extent of Mart and Whitten's negligence. The cumulative effect of Lehigh's conduct eliminates any purported claim of prejudice by operation of the dismissal. The trial court's dismissal of Mannix was proper since there could be no basis for any liability by Mannix, either on the theory of indemnity or negligence in the light of the verdict.

█ 3. Bebeau's challenge to the remittitur is predicated upon the failure of the trial court to support its reduction of the jury's damage award with specific findings and upon his reliance on certain expert testimony indicating that his maximum potential future earning capacity would exceed $800,000.

Appellate review of the trial court's order granting remittitur is appropriate, although Bebeau originally consented to the reduction, and the order is examined, as in the case of an unconditional grant of a new trial, to determine whether there has been a clear abuse of the trial court's discretion. *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377, 400 (Minn.1977). As we have stated on numerous prior occasions, however, effective appellate review is most readily facilitated when the trial court has issued findings of fact and a legal analysis in sufficient detail to allow this court to fully comprehend the basis of the trial court's decision. *See, e. g., Wiese v. Wiese*, 295 N.W.2d 371, 372 (Minn.1980).

In the case at hand, the trial court simply reduced the damage award from $639,000 to $250,000 without providing its rationale for the reduction. We are therefore unable to determine whether the court properly considered factors germane to its conclusion that the jury verdict was excessive as enunciated in *Sorenson v. Kruse*, 293 N.W.2d 56, 63 (Minn.1980). While the absence of specific findings in support of such an order has not always required an automatic reversal of the trial court's order if we are reasonably able to assume its rationale, *see, e. g., Jangula v. Klocek*, 284 Minn. 477, 170 N.W.2d 587 (1969), *Dzuik v. Loehrer*, 266 Minn. 153, 123 N.W.2d 86 (1963), the absence here is critical, particularly since the record exhibits such a broad range of potential damages suffered by Bebeau.

It is our view that the trial court's order granting the remittitur must be reversed and the matter remanded for a new trial on the question of damages alone. Liberally construing the order for the remittitur, we conclude that the trial court must have been convinced that the jury award was excessive and failed to fairly reflect the cumulative but varied testimony relating to loss of future earning capacity. Had the implications conveyed by the trial court's decision been articulated as basis for an

order granting a new trial, the order might well have survived a challenge that it constituted an abuse of discretion. For that reason, a new trial is appropriate. *See Lambertson v. Cincinnati Corp.*, 257 N.W.2d 679 (Minn.1977) (trial court has broad discretion in determining whether a new trial should be granted for excessive damages).

Affirmed in part and reversed and remanded in part.