### Ex Parte Jenkins.

[No. 3,576. Filed November 23, 1900.]

EXECUTORS AND ADMINISTRATORS.—*Ex Parte Application for Letters of Administration.*—*Discretion of Court.*—Although the circuit court has a discretion in the granting or refusing applications for letters of administration, yet where the proceeding is *ex parte* and a verified application shows the party entitled to letters, they should be granted. *p. 533.*

SAME.—*Letters May Be Granted Though No Tangible Assets.*—The right to letters of administration does not depend upon the existence of tangible assets to administer. Letters may be granted in order that an action may be prosecuted. *pp. 533, 534.*

SAME.—*Letters of Administration to Prosecute Action on Official Bond of Sheriff for Permitting Death of Prisoner.*—Where a sheriff of a county permitted a prisoner to be taken from the county jail and put to death, the widow of the deceased prisoner was entitled to

letters of administration, although the only asset of such deceased prisoner's estate was the right of action on the official bond of the sheriff for breach of official duty, and such breach had occurred more than two years prior to the application for such letters. *pp. 534, 535.*

From the Ripley Circuit Court. *Reversed.*

*W. R. Crawford, W. H. Najdowski* and *Merrill Moores,* for appellants.

Robinson, C. J.—Lulu C. Jenkins applied to the Ripley Circuit Court for letters of administration *de bonis non* on the estate of her deceased husband, William H. Jenkins. The court denied her application and upon that action of the court she predicates error. Upon the application of the petitioner this cause was advanced upon the docket of this court.

The proceeding below was *ex parte,* and in her verified petition she shows that her husband, William H. Jenkins, was an inhabitant of Ripley county, Indiana; that in September, 1897, he was held by Henry Busching, the sheriff of Ripley county, as a prisoner in the county jail at Versailles, and that on or about the 15th day of September, 1897, a mob composed of divers persons entered the jail and killed Jenkins and other prisoners then in the custody of the sheriff; that Jenkins left an estate worth less than $500, which was, by a decree of court, vested in the petitioner as widow; that except the above there is not now and never has been any administration of his estate, nor has any executor or administrator ever been appointed; that decedent left no children; that there are no claims due from or to the estate except a claim for the killing of decedent, which she desires to prosecute.

While it is true the circuit court has a discretion in granting or refusing applications for letters of administration, yet where the proceeding is purely *ex parte* and a verified application shows the party entitled to letters, they should be granted. The right to letters does not depend

upon the existence of tangible assets to administer. "There are instances" said the court in *Toledo, etc., R. Co.* v. *Reeves,* 8 Ind. App. 667, "in which such appointment may become proper and necessary in order to prosecute some claim of indeterminate value, or to make satisfaction of record of a claim which had been paid but not satisfied, and perhaps for other purposes."

It appears the court found generally the settlement of the estate; that there were no assets and no administration pending, as set out in the petition, and also found that Jenkins was killed September 15, 1897; that the petition was filed February 23, 1900, and that any right of action arising out of the killing expired by limitation of law September 16, 1899, and since that date has not constituted an asset of the estate. In an application for letters, where there are no tangible assets to administer, the application should show some claim or the right to enforce some claim in the estate's favor. The application does this, and being verified and *ex parte* its averments must be taken as true.

The application states, among other things, "that on or about the 15th day of September, 1897, the said William H. Jenkins was in the full enjoyment of his health and life, but was held by Henry Busching, the sheriff of said Ripley county, Indiana, as a prisoner in the county jail at Versailles, Indiana, and that on or about the 15th day of September, 1897, a mob composed of divers persons entered into the said jail at Versailles, Indiana, and killed the said William H. Jenkins and other prisoners in the custody of said sheriff at said place either by shooting or clubbing or hanging."

It is unnecessary to cite authorities to the effect that when a sheriff takes property of any kind into his possession by virtue of a writ, he is bound to take ordinary care of the property and prevent its deterioration or destruction, and for a failure in this regard he is liable on his bond. There certainly can be no reason for saying that his duty as to

care is not at least equally obligatory in respect of a prisoner who is in his custody by virtue of his office. In *State* v. *Gobin,* 94 Fed. 48, Baker, J., said: "When a sheriff, by virtue of his office, has arrested and imprisoned a human being, he is bound to exercise ordinary and reasonable care, under the circumstances of each particular case, for the preservation of his life and health. This duty of care is one owing by him to the person in his custody by virtue of his office, and for a breach of such duty he and his sureties are responsible in damages on his official bond. *Asher* v. *Cabell,* 1 C. C. A. 693, 50 Fed. 818; *Hixon* v. *Cupp,* 5 Okl. 545, 49 Pac. 927."

The sheriff of the county has the care and custody of prisoners committed to the county jail. The duty the sheriff owes to the State to keep a prisoner committed to his custody and deliver him over to the proper authority at the proper time, is no more compulsory than is the duty he owes the prisoner himself to exercise reasonable and ordinary care to protect the prisoner's life and health. If he permits a prisoner to escape or to be taken from his custody the fault is *prima facie* his, and there has been *prima facie* a breach of official duty for which he is liable on his official bond. The sheriff's conduct in this instance may have been such that a right of action accrued to decedent before his death which would not necessarily abate at his death. But in this case it is not necessary that we should decide, and we do not decide, anything upon that question.

It was necessary that the petitioner show a *prima facie* right to letters. She might under certain circumstances prosecute an action against those who killed her husband although more than two years had elapsed since the killing. The limitation does not necessarily and of itself prevent the action. The defendant, or defendants, as the case might be, may take advantage of that fact or it may be waived. Whether they would or would not do so can not determine the petitioner's right to letters. Having by her petition shown a

*prima facie* right to letters, her petition should have been granted.

Judgment reversed, with instructions to grant the petitioner's application. The clerk is directed to certify this decision to the lower court at once.