## McFarland v. Ellison et al.

(Decided Dec. 18, 1936.)

R. S. ROSE for appellant.

J. B. JOHNSON for appellee Richard Ellison.

T. E. MAHAN for appellees Steely and the Fidelity & Casualty Ins. Co.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Affirming.

The appeal is from a judgment sustaining a general and special demurrer to, and dismissing, the petition as amended.

The facts pleaded are in brief as follows: Fannie McFarland was the wife of George McFarland, deceased, and the mother of their two infant children,

Robert Paul McFarland and Georgie Allien McFarland. George McFarland died on October 4, 1934, and L. D. Moore, who was appointed and qualified as his administrator, refused to bring this action. Richard Ellison was the marshal of the town of Williamsburg, and had executed bond for the faithful performance of his duty. Brance Steely was a deputy sheriff of Whitley county, and had executed bond for the faithful performance of his duty with the Fidelity & Casualty Insurance Company of New York as his surety. On October 4, 1934, Ellison as marshal and Steely as deputy sheriff arrested George McFarland for being drunk. McFarland was very drunk and helpless, and while in the custody and under the care of said officers they, of their gross negligence and carelessness, suffered and permitted him to attempt to escape. "They well knew that if he did undertake said escape that (from) said arrest and custody, which was at the house of said George McFarland and near Cumberland River, that said George McFarland would try to effect said escape, and in doing so fell into the Cumberland River and was drowned." The said way of said escape was around a bluff of said river and dangerous, and each of the defendants knew the said fact, and knew the helpless condition of George McFarland. Owing to his drunken condition, George McFarland did not know the danger. After George had fallen into the river and was drowning, his brother, Charles McFarland, swam in to get him, and called upon both the defendants to help him, but they refused to render any assistance and suffered him to drown. Had they rendered any assistance to the said Charles McFarland or George McFarland, they could have gotten him out and prevented his death. They had ample opportunity and chance to keep him from drowning, but refused by their gross negligence and wantonness to do so. By reason of the wrongs and injuries complained of, the estate of George McFarland and the plaintiffs were damaged in the sum of $10,000. Later on there was filed an amended petition setting out with more particularity the execution of the bond by the Fidelity & Casualty Insurance Company of New York to the sheriff, Will Hamlin, and alleging that the plaintiffs were the only beneficiaries and real parties in interest for all wrongs sued for.

There are occasions, of course, when an officer having a prisoner in custody may be liable to the pris-

oner or his representatives for a failure to protect him from injury, and more particularly where he is unable to protect himself. Thus in State of Indiana ex rel. Tyler v. Gobin (C. C.) 94 F. 48, the sheriff and his sureties were held liable where he negligently suffered a prisoner in his lawful custody to be killed by a mob. The same rule was applied in Ex Parte Jenkins, 25 Ind. App. 532, 58 N. E. 560, 81 Am. St. Rep. 114. In Asher v. Cabell, 50 F. 818, 1 C. C. A. 693, 2 U. S. App. 158, the act of a United States marshal in wrongfully permitting a prisoner in charge of a deputy marshal whom he knew to be incompetent and unfit to perform the duties of his office to be killed by a mob was held sufficient to render the officer liable on his official bond because of his personal negligence for the killing of the prisoner through the deputy's unfitness. In Kusah v. McCorkle, 100 Wash. 318, 170 P. 1023, L. R. A. 1918 C, 1158, the sheriff was held liable in damages on his official bond to a prisoner in his custody for injuries inflicted by an attack upon him with a deadly weapon by an innocent suspect whom the sheriff's deputy negligently confined in the same room with the injured person without searching him for weapons. In Logan v. United States, 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429, the right of a citizen of the United States in the custody of a United States marshal under the lawful commitment for an offense against the United States to be protected by the officer against lawless violence is clearly recognized. In the case under consideration, the prisoner was not in the custody of the officers at the time of his drowning. Liability is predicated on the negligence of the officers in permitting the prisoner to escape, coupled with the allegation that they knew the route he would take and that it was dangerous, and that when called upon to help they refused to render any assistance and suffered him to drown. It is not perceived how the alleged negligence of the officers in permitting the prisoner to escape adds anything to the cause of action. Inasmuch as it is not customary to handcuff one arrested for a misdemeanor, and the officers are not permitted to shoot him for the purpose of preventing his escape, escape is not difficult where the prisoner is more fleet of foot than the officers. But, be this as it may, it hardly can be said that officers having a prisoner in their custody owe him, as well as the commonwealth, the duty of preventing his escape. It

is his duty to submit to arrest and accompany the officer, and one may not violate the law and recover damages from the officer on the ground that he did not prevent the violation, and those who claim through him occupy no better position. We come then to the charge that the officers failed to render assistance when called on for help. The Cumberland river is a large stream. How far the prisoner was from the shore when he was drowned, or how far off the officers were when called on for assistance, does not appear. We are not even advised that the officers could swim, much less that they could swim with their clothes on and rescue a prisoner who was seeking to escape. No explanation is made of the failure of the prisoner's brother, who knew how to swim and did swim into the river, to rescue him from drowning. Whether or not a situation might arise when officers would be liable for their failure to rescue a prisoner from drowning, we need not determine. Clearly they are not charged with the duty of risking their own lives in an effort to rescue a prisoner whose predicament was due solely to his own act in trying to escape. It follows that the general demurrer to the petition as amended was properly sustained.

There being no liability on the part of Brance Steely, the deputy sheriff, there is none on the part of his surety, and the result being the same, it is immaterial that the court sustain the special demurrer of the surety instead of its general demurrer.

Judgment affirmed.