### MILDRED E. STAHLBERG v. JAMES A. MOE AND ANOTHER, d.b.a. JIM AND FRANK'S BEAUTY SALON.

166 N. W. (2d) 340.

March 14, 1969—No. 41411.

*Stringer, Donnelly & Sharood* and *Charles A. Flinn, Jr.,* for appellants. *Silver & Ryan* and *Richard B. Ryan,* for respondent.

---

[2] See, Connolly v. The Nicollet Hotel, 258 Minn. 405, 104 N. W. (2d) 721.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from an order of the district court denying defendants' motion for a new trial and from the judgment entered in favor of plaintiff.

About 10:30 a. m. March 11, 1964, plaintiff, Mildred E. Stahlberg, entered Jim and Frank's Beauty Salon, owned and operated by defendants, James A. Moe and James R. Lang, in White Bear Lake, to obtain a shampoo, haircut, cold-wave permanent, and tint rinse for her hair. She had patronized the shop since the fall of 1963 and defendants' records showed she had received a permanent there in December 1963. Plaintiff specified the treatment she wished to receive but made no request for a particular brand or type of solution, simply indicating which of the several price categories she wished. Defendant Lang, who performed the work, chose the solutions accordingly.

Plaintiff left the shop about 3 hours later. Except for having requested that the hair drier be turned down, she had made no complaints concerning the manner in which the work was done and was satisfied with the appearance of her hair. Approximately 2 hours after her departure she developed itching and burning sensations on her face and head, and both became extremely red in color. She also developed a headache, some watering of the eyes, and nausea. She contacted the beauty shop and was told she could apply cold cream that had no alcoholic content and that she should call back in the morning. She had no cold cream so she applied vaseline instead. After a sleepless night, due to the headache and burning sensation, she called the shop the next morning and was told to come in at noon. Lang examined plaintiff's scalp and noticed red spots on the crown and back. He attempted to wash her hair and put some curlers in it, but she was unable to stand having her head touched. Lang then advised her to see a doctor.

Plaintiff consulted a Dr. Wedes on two separate occasions. He suggested she consult a specialist, so she contacted Dr. Francis W. Lynch, a specialist in dermatology, who first saw her on March 18, 1964. He said

she told him she had had a permanent wave and tint about a week earlier and that about 2 hours after the procedure she had noticed itching, redness, and scaling. After she had further described her experiences, Dr. Lynch examined her and found redness and slight swelling of the central and anterior portions of her scalp, with less severe and less extensive involvement of the scalp near the nape of the neck. He formed the opinion she was suffering from contact dermatitis caused by one or another of the solutions applied in the course of the permanent waving and tinting during her treatment at the beauty shop on March 11. She continued to receive treatment from Dr. Lynch who, prior to the trial, last saw her on February 17, 1967. During the course of treatment, comprising some 26 office calls and 6 or 8 changes in medication, the acute stage of the dermatitis, which had involved sores on her head that scabbed over and were extremely painful, subsided. By July 16, 1964, the condition consisted of diffused scaling, thickening of the skin, and itching. On September 10, 1964, there remained three scaling, itching plaques a half inch to an inch in diameter. In additon, there developed in the central portion of the scalp a shiny, taut, hairless area about three inches in diameter. Although the size of the plaques and the amount of scaling varied from time to time, there was still some slight scaling present at the last examination on February 17, 1967.

Plaintiff remained away from her job as receptionist and switchboard operator at the Hastings State Hospital from March 11, the date of the permanent, until April 16, 1964. When she returned, the headset she was required to wear at the switchboard caused her discomfort. The sores and scaling on her scalp were visible at a distance of 5 to 10 feet. Plaintiff said that she was uncomfortable all the time and subject to constant itching; that she was embarrassed at the condition of her hair, but was unable to have it dressed or do anything with it; and that her job was such that she was required to be in plain view of anyone entering the main lobby of the hospital. She retired about Christmas of 1965, although she claims she would have continued working had it not been for the nervousness and embarrassment she experienced due to the condition of her scalp and hair.

Plaintiff brings this action to recover from the owners of the beauty

shop, alleging they were negligent in the application to her hair and scalp of the products selected by them. By their answer defendants denied negligence and claimed that if plaintiff sustained injury it was due either to the acts of corporations over which they had no control or to plaintiff's contributory negligence or assumption of risk. Defendants joined as third-party defendants Wella Corporation and Turner Hall Corporation, manufacturers of the permanent-waving solution and tint applied to plaintiff's hair.

Following trial before a jury the court granted a directed verdict in favor of the third-party defendants and a directed verdict in favor of plaintiff against defendants Moe and Lang on the issue of liability only. The issue of damages was submitted to the jury under instructions which permitted it to include future damages in the recovery awarded. The jury set plaintiff's damages at $4,130 and judgment was entered on the verdict. It is from that judgment and the denial of their motion for a new trial that defendants appeal.

Defendants raise two issues: (1) Whether the evidence justified the trial court in concluding that defendants were negligent as a matter of law and that their negligence was a proximate cause of plaintiff's injuries; and (2) whether the court erred in allowing the jury to consider an award of future damages.

As is apparent, each of these issues involved the consideration of the evidence introduced at trial and its sufficiency to support the conclusions reached by the trial court.

From the record it appears that the choice and use of the solutions were exclusively in the hands of defendants; that they were aware of the potentially dangerous character of the solutions; that they had no independent knowledge of the chemical nature of the solutions, had made no attempt to secure such knowledge, and, therefore, had to rely on the instructions of the manufacturers as to their proper use; that defendant Lang did not read the manufacturers' instructions immediately prior to applying the solutions to plaintiff's scalp and deviated from the prescribed method of application of the permanent wave, the neutralizer, and the tint rinse; that plaintiff had a prolonged history of continuing

beauty parlor treatments without any adverse reactions and no observable scalp problems prior to the commencement of the treatment on March 11, 1964; that shortly after receiving the treatment at the hands of defendant Lang on that date plaintiff experienced inflammation, itching, headache, sores, and diffused loss of hair; and that where care is used by a beauty operator in the application of permanent waves and rinses, the customer does not ordinarily suffer any ill effects,

Plaintiff did not attempt to pinpoint any more specifically the agent which caused her condition. No attempt was made to establish which of the solutions, or what combination of them, caused her reaction, or whether that reaction was allergic or irritant. In granting a directed verdict as to third-party defendants Wella and Turner Hall, the trial judge pointed out that there was no evidence as to which of the solutions caused the injury or that any of them were dangerous per se, and that for the jury to decide that the injury was caused by one solution rather than the others would be pure speculation.

Cross-examination of Dr. Lynch by defendants Moe and Lang and third-party defendants indicated that any of the solutions by themselves, a combination of them, a misapplication, or an allergic reaction by plaintiff could have been responsible for her condition. Dr. Lynch was not asked and did not volunteer any opinion as to which of these possibilities was in fact the cause, or even whether one was more likely to have been the cause than the others.

It is plaintiff's position that the doctrine of res ipsa loquitur is applicable and will sustain the directed verdict. She points to the fact that she entered the beauty parlor with a healthy scalp and no previous history of difficulty due to permanents or rinses, received a permanent and rinse from defandant Lang—who had complete control over the solutions used and the manner in which they were applied—, and shortly thereafter began experiencing the symptoms which prompted the present action. She further points out that Lang admitted at trial that where the beautician uses care in the treatment there is ordinarily no adverse effect on the customer.

In Johnson v. West Fargo Mfg. Co. 255 Minn. 19, 25, note 3, 95

N. W. (2d) 497, 502, note 3, this court has stated the requirements for the application of the doctrine of res ipsa loquitur as follows:

"* * * (1) Plaintiff must have been injured by an apparatus or instrumentality whose nature is such that injury is not ordinarily to be expected in the absence of negligence; (2) at the time of the injury both inspection and user must have been in the exclusive control of the defendant; and (3) the injurious condition or occurrence must not have been due to any voluntary action on the part of plaintiffs."

In Johnson we also pointed out that the introduction of specific evidence as to the cause of the injury does not deprive a plaintiff of the benefit of the doctrine so long as that evidence does not conclusively establish the cause of the injury.

It appears that in the present case the requirements listed in Johnson are met and the fact that plaintiff did not prove the precise element in the treatment that caused the injury would not prevent a jury from finding in her favor. However, it is clear that under Minnesota law the doctrine is merely a form of circumstantial evidence creating a permissive inference of negligence, Rule 43.06, Rules of Civil Procedure, and that the jury is not normally required to draw that inference if it chooses not to do so. Gardner v. Coca Cola Bottling Co. 267 Minn. 505, 509, 127 N. W. (2d) 557, 561. Therefore, where there is evidence of other possible causes of plaintiff's injury which would not involve a breach of duty on the part of the defendant, and men of ordinary intelligence could reasonably accept one of these causes, defendant's liability becomes a jury question.

As stated, the cross-examination of the doctor brought out the fact that an allergic reaction on the part of plaintiff was a possible cause of her condition. As to the tint rinse, the manner in which Lang failed to follow the directions—failure to give a "patch test"—relates specifically to possible allergic reactions. But there is no evidence that Lang could have determined that plaintiff was allergic to any of the ingredients in the other solutions applied prior to application or that a sufficient number of persons are allergic to any such ingredients so as to make any use of them in a shop open to the public, negligent. The only evidence mak-

ing an allergic reaction a less likely cause than defendants' negligence is plaintiff's past history of beauty treatments, without reaction. However, both Dr. Lynch and defendant Lang testified that a person could be allergic to something on one occasion without having reacted to previous applications. Furthermore, the permanent wave solution used here had not been administered to plaintiff during the previous permanent at defendants' shop in December 1963, and there is no evidence she had ever had it applied to her hair before.

Under these circumstances it would appear that a jury could find that plaintiff's condition resulted from an allergic reaction on her part rather than negligence on the part of defendants in applying any of the solutions used. Unless it appeared there was some way defendants could have established the existence or nonexistence of such an allergy, or that the solutions chosen by defendants contained ingredients likely to produce an allergic reaction in a significant number of persons, it does not seem that there should be any liability for the use of such solutions on plaintiff. Therefore, a directed verdict was not justified.

The case is remanded for a new trial since there is clearly not enough evidence to justify a directed verdict for defendants. On retrial plaintiff may well be able to establish the requisite causal connection, or at least eliminate those causes for which defendants would not be responsible. Drake v. Connolly, 183 Minn. 89, 235 N. W. 614.

Because we have determined that a new trial must be granted, it is not necessary that we resolve the question of future damages. However, since the question may well come up again in the course of the new trial, we deem it advisable to comment briefly upon it.

Defendants do not contend, nor could they contend, that the instructions given were not a proper statement of the law on future damages. The instructions given were precisely those approved by this court in Carpenter v. Nelson, 257 Minn. 424, 101 N. W. (2d) 918. Rather, it is defendants' claim that there was no evidence on which the jury could find that plaintiff would suffer any future damages or injuries as a result of their negligence. They argue that plaintiff failed to establish the requisite causal connection between her condition at the time of the trial and any negligence of defendants during the March 11 beauty treatment.

It is well-settled law in this state that the need for positive expert testimony to establish a causal connection between the defendant's negligent act and the plaintiff's injury or condition depends upon the nature of the question. Where the question involves obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding, there must be expert testimony, based on an adequate factual foundation, that the thing alleged to have caused the result not only might have done so, but in fact did cause it. Saaf v. Duluth Police Pension Relief Assn. 240 Minn. 60, 64, 59 N. W. (2d) 883, 886; Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49. On the other hand, under normal circumstances expert opinions are not conclusive on the jury and it is not bound to accept them. Backman v. Fitch, 272 Minn. 143, 137 N. W. (2d) 574; Dziuk v. Luehrer, 266 Minn. 153, 123 N. W. (2d) 86. See, also, Carpenter v. Nelson, *supra.*

Here, the testimony of the lone expert is somewhat confused, perhaps due to the fact that there were three separate cross-examinations, each seeking to establish different facts. Further, the record discloses considerable reluctance on the part of the expert to testify at all. Because both of these difficulties may not occur on retrial, we go no further than to call attention to the circumstances under which positive expert testimony is required to permit the jury to find a causal connection between the negligent conduct, if any, and plaintiff's condition.

Reversed and remanded for new trial.