ELIZABETH JOHNSON, ADMINISTRATRIX OF THE ESTATE OF CECIL JOHNSON, JR., DECEASED *v.* ROBERT A. BENDER, AS SHERIFF OF ALLEN COUNTY, INDIANA

[No. 3-575A83. Filed November 28, 1977. Rehearing denied January 5, 1978. Transfer denied March 7, 1978.]

*Sherrill William Colvin, Stephen L. Williams, Snouffer, Haller & Colvin,* of Fort Wayne, for appellant.

*Harry W. Scott, Philip H. Larmore, Thomas E. Ruzzo, Adair, Perry, Beers, McAlister & Mallers,* of Fort Wayne, for appellee.

HOFFMAN, J.—Plaintiff-appellant Elizabeth Johnson, Administratrix of the Estate of Cecil Johnson, Jr., brought a wrongful death action against Robert A. Bender, Sheriff of Allen County, Indiana, alleging that the death of appellant's decedent was proximately caused by the Sheriff's negligence in failing to provide proper medical care for the deceased while incarcerated in the Allen County jail.[1]

Following trial to a jury, a verdict was returned for appellant in the amount of $50,000, and judgment entered thereon by the trial court. On November 27, 1974, Sheriff moved for judgment on the evidence in his motion to correct errors. On January 2, 1975, the trial court set aside the judgment entered on the jury's verdict and entered judgment on the evidence for Sheriff. On January 23, 1975, appellant filed her motion to correct errors, which was subsequently denied by the trial court, and this appeal follows.

The issues presented concern the appropriate standard for judgment on the evidence made in a motion to correct errors and

---

1. The complaint also joined as defendants "Richard Ellingwood, Charles Weyrick and Charles Howmig, all in their respective capacities as Commissioners for the County of Allen, Indiana." These defendants were granted judgment on the evidence at the close of plaintiff-appellant's case-in-chief and are not involved in this appeal.

whether there was the requisite quantum of proof on the element of proximate cause to withstand such motion.

Indiana Rules of Trial Procedure, Trial Rule 50(A)(4), permits a motion for judgment on the evidence to be made in a motion to correct errors. The standard to be employed by the trial court when considering a motion for judgment on the evidence subsequent to the jury's verdict is the same standard which applies to a motion for judgment on the evidence made at the conclusion of the evidence. The trial court must view only the evidence favorable to the nonmoving party and the reasonable inferences to be drawn therefrom and may enter judgment only if there is no substantial evidence or reasonable inference to be adduced from the evidence to support an essential element of the claim. In determining whether to enter judgment contrary to the verdict, the trial court may not weigh the evidence. If the trial court is convinced that the weight of conflicting evidence preponderates against the jury's verdict, it should order a new trial. *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985.

On appeal from the trial court's entering of judgment notwithstanding the verdict, this court must determine whether there is evidence of probative value to support each essential element of plaintiff's claim. If there is relevant evidence to support the claim, then, even though the evidence is conflicting, a judgment on the evidence should not have been granted in favor of defendant. *Huff v. Travelers Indem. Co., supra.*

The evidence discloses that Cecil Johnson, Jr. was incarcerated in the Allen County jail on Friday, September 3, 1971. Doctor Richard G. Loudermilk, the jail physician, was called concerning Johnson's physical condition. Dr. Loudermilk had Johnson taken to Parkview Hospital for x-rays of his facial bones and then brought to his office for examination. Dr. Loudermilk observed a great deal of swelling around Johnson's face, eyes and forehead and tested Johnson to determine whether there was any neurological damage. The only medication prescribed by Dr. Loudermilk was aspirin. Johnson left Dr. Loudermilk's office in

in the custody of deputies.

Frank Black, an inmate in the Allen County jail, testified that Johnson was placed in his cell between 5:00 P.M.—6:00 P.M. on Saturday, September 4, 1971. During this time, Black observed Johnson "bumping his head against the wall and sweating." Black smelled Johnson's breath but did not think that Johnson was intoxicated or had delirium tremens. (Dr. Loudermilk stated that Johnson did not exhibit any signs of the "D.T.'s" at the time of his examination on Friday.) Black informed Deputy King of Johnson's conduct, that Johnson didn't appear to be drunk, and that Johnson needed a doctor.

Deputy King entered the cell, put a headlock on Johnson, and took him to another cell about 12 to 15 feet away. Black testified that he "could hear something thumping all night just like it was when he was in my cell." He told the deputies about this the next morning but nothing happened.

When the next shift of deputies arrived for duty, Black told Deputy Church that Johnson had been raving the entire night and requested Deputy Church to get a doctor for Johnson. Black observed Deputy Church use the telephone. When Deputy Church returned, he placed Johnson in another cell next to Black's cell. Between 3:00—4:00 P.M. Black observed two deputies enter Johnson's cell carrying a paper drinking cup, heard a scuffle and heard Deputy King say that "he kicked some on me but he got most of it down him, enough to do him some good." Black recognized the smell of paraldehyde on Deputy King's shirt.

Paraldehyde is a prescription drug used as a sedative. Its widest use is in treating delirium tremens or treating someone who appears to be going into a convulsion. Dr. Walter Griest described the odor as "acrid or sharp." Dr. Loudermilk testified that it is "probably the worst smelling stuff that there is." Frank Black, who had drunk paraldehyde before, stated that it has a "real nasty smell" which is difficult to describe "unless you've drank it 'cause it makes you sick." Dr. Loudermilk further testified that he had not prescribed paraldehyde for Johnson and

that paraldehyde should not be given to one who is unconscious or semi-conscious.

Approximately 15 minutes after the deputies entered Johnson's cell with a drinking cup, the deputies asked Black for his blanket. Johnson was removed from the cell dead. Dr. Walter Griest, a certified pathologist, performed an autopsy on Johnson on September 6, 1971, and found the immediate cause of death to be aspiration of gastric content. In other words, Johnson had vomited, that material remained in the back of the throat, and Johnson then inhaled this material into his lungs. Dr. Griest testified that death would occur fairly immediately.

A cause of action founded upon negligence is comprised of three essential elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure to conform to the requisite standard of care required by the duty; and (3) an injury resulting from the breach. *Miller v. Griesel et al.* (1974), 261 Ind. 604, 308 N.E.2d 701.

The law recognizes an obligation on the part of a sheriff to conform his conduct to a certain standard of care for the benefit of his prisoners. The county sheriff, by himself or deputy, is required to keep the jail and is responsible for the manner in which it is kept. IC 1971, 11-5-1-3 (Burns Code Ed.). He is required to take care of the prisoners committed to the county jail, IC 1971, 17-3-5-2 (Burns Code Ed.), and is responsible for the acts of his deputies. IC 1971, 17-3-5-4 (Burns Code Ed.). Thus, the sheriff, who is charged with the care and custody of a prisoner, has a duty to take reasonable precautions under the circumstances to preserve the life, health and safety of the prisoner. *Roberts v. State et al.* (1974), 159 Ind. App. 456, 307 N.E.2d 501; *Magenheimer v. State ex rel. Dalton* (1950), 120 Ind. App. 128, 90 N.E.2d 813; *Ex Parte Jenkins* (1900), 25 Ind. App. 532, 58 N.E. 560.

The issue in the case at bar focuses upon whether there is some reasonable connection between the act or omission of the defendant and the injury which the plaintiff has suffered, *i.e.*, the question of proximate cause. A proximate cause of an injury is the cause which sets in motion the chain of

circumstances leading up to the injury. *New York Central R. Co. v. Cavinder, etc.* (1965), 141 Ind. App. 42, 211 N.E.2d 502 (transfer denied). It involves the idea of continuity in that there must be some degree of progression from the negligent act into the causal sequence which results in injury. *Tabor v. Continental Baking Company* (1941), 110 Ind. App. 633, 38 N.E.2d 257 (transfer denied). Proximate cause has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. *New York Central R. Co. v. Cavinder, etc., supra.* Foreseeability of injury is regarded as an essential element or fundamental test of proximate cause. Thus, negligence will not be deemed to have been the proximate cause of injury so as to impose liability therefor, unless the consequence was one which, in the light of attending circumstances, should reasonably have been foreseen. *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847; *New York Central R. Co. v. Cavinder, etc., supra.* However, the specific manner in which injury occurs or the extent of the harm need not be foreseen if it can be reasonably anticipated that conduct will cause injury in substantially the manner in which it occurs. *Tabor v. Continental Baking Company, supra.* Thus, if the defendant's negligence is a substantial factor in producing plaintiff's injury, and if the particular injury suffered is one of a class that was reasonably foreseeable at the time of the defendant's wrongful act, then there is causal relation in fact as well as legal cause. *Tabor v. Continental Baking Company, supra.*

In the case at bar, the immediate cause of death was aspiration of gastric content. The evidence permits an inference that paraldehyde was forcibly administered to the deceased by two deputies. However, appellee contends that there is no evidence that the administration of paraldehyde caused decedent to vomit, asserting that the medical evidence establishes only that the pouring of a liquid down a person's throat could result in *coughing* if the liquid was irritating to the respiratory tree. Appellee's argument thus presents the question of whether a chain of causation which includes medical facts may

be interpreted by the trier of fact without a medical opinion to support it. The necessity of expert medical testimony to establish a causal connection generally depends upon the nature of the medical question involved. Thus, expert testimony is required where the question involves medical factors beyond the common knowledge of the layman such that the jury could only indulge in speculation in making a finding based thereon. *Stahlberg v. Moe* (1968), 283 Minn. 78, 166 N.W.2d 340, 345; Prosser, *Torts*, § 41, 236, at 241-42 (4th Ed. 1971); 65A C.J.S., *Negligence*, § 244(4), at 736.

However, on medical matters which are within the common experience, observation, or knowledge of layman, no expert testimony is required to permit a conclusion on causation. *Mitchell v. Coca-Cola Bottling Co.* (1960), 11 A.D.2d 579, 200 N.Y.S.2d 478; Prosser, *Torts, supra*; 65A C.J.S., *Negligence*, § 244(4), *supra*. In the case at bar, lay testimony from a witness who has drunk paraldehyde reveals that it "makes you sick." Moreover, the pungent aroma of the drug was described as of a revolting nature. Consequently, the jury could infer that the forceful administration of the drug to Johnson under the circumstances could lead to vomiting.

And, once this causal link is established, the aspiration of gastric content is a natural and probable consequence of the negligent act. The testimony supports an inference that Johnson was an alcoholic. Medical testimony was to the effect that aspiration of gastric content, although generally unanticipated, may occur when a person experiences various traumas. Moreover, there is medical evidence to the effect that alcoholics are a group which may often vomit and aspirate gastric content.

It is clear that a tortfeasor takes the person he injures as he finds him. The tortfeasor is not relieved from liability merely because a pre-existing physical condition of the injured party makes him more susceptible to injury. 25 C.J.S., *Damages*, § 21, at 658. Moreover, the negligent tortfeasor is liable for harm to the injured person even though the physical condition of the injured party is neither known nor

should be known to the negligent tortfeasor. Thus, the Sheriff need only have foreseen the nausea of plaintiff from administering the drug and need not have foreseen the greater injury. 2 Restatement of Torts 2d, § 461, at 502 (1965).

The issue of proximate cause was a question for the jury in the case at bar. *Elder v. Fisher, supra* (1966), 247 Ind. 598, 217 N.E.2d 847; *Dreibelbis v. Bennett* (1974), 162 Ind. App. 414, 319 N.E.2d 634; *New York Central R. Co. v. Cavinder, etc., supra* (1965), 141 Ind. App. 42, 211 N.E.2d 502 (transfer denied); *Tabor v. Continental Baking Company, supra* (1941), 110 Ind. App. 633, 38 N.E.2d 257 (transfer denied).

The trial court erred in entering judgment on the evidence. Accordingly the judgment of the trial court is reversed and this cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

Staton, P.J. concurs.

Garrard, J. concurs with opinion.

CONCURRING OPINION

GARRARD, J.—I agree that *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985, which was handed down after the court's ruling herein, precludes granting judgment on the evidence because of the evidence produced by the plaintiff at trial and referred to in Judge Hoffman's opinion. We do not know the precise basis upon which the trial court ruled. However, it should be noted that much of the evidence relied upon by the plaintiff was directly and emphatically denied by witnesses for the defense. As Judge Hoffman points out, *Huff* provides that if the trial judge is convinced the verdict is against the *weight* of the evidence (which, of course, includes determining credibility) he may grant a new trial, but he may not enter judgment on the evidence for the party who did not prevail with the jury.

While there is a certain illogic in denying the court power to enter its own judgment while theoretically permitting it power to grant new trials until a jury agrees with the judge, I believe the defect is more theoretical than real. It also exists as a function of our concept of the right to fact determination by a jury. New trials do not necessarily duplicate old trials. Most often they result in a presentation which more effectively resolves doubt on the part of either the jury or the sitting judge.

Of course, in many cases the parties may utilize Indiana Rules of Procedure, Trial Rule 76(5) to secure not only a new jury but a different judge. Finally, I suspect it would be the rare case indeed where a judge having once set aside a jury's determination on the weight to be given the evidence, would feel the same compulsion to set aside the same verdict arrived at again by a new panel of jurors.

I therefore concur.

NOTE—Reported at 369 N.E.2d 936.