Carlos Eugenio IGLESIAS, Appellant,

v.

James L. WELLS, in his official capacity as Sheriff of Marion County, Indiana, and not as an Individual, Appellee.

No. 1–1281A352.

Court of Appeals of Indiana, First District.

Nov. 24, 1982.

Rehearing Denied Dec. 21, 1982.

**1018**

M. Anne Wilcox, Ralph Ogden, J. William DuMond, Wilcox, Ogden & DuMond, Indianapolis, for appellant.

Marilyn A. Moores, Thomas Campbell, City-County Legal Division, Indianapolis, for appellee.

ROBERTSON, Judge.

Carlos Eugenio Iglesias appeals the dismissal of his complaint for damages against James L. Wells, Sheriff of Marion County, Indiana. Iglesias's complaint alleges the Sheriff negligently released him from the Marion County Jail, after he served a sentence for public intoxication, under circumstances which exposed him to severe winter weather and which caused permanent injury to his feet. The complaint was dismissed for failure to state a claim upon which relief can be granted pursuant to Ind.Rules of Procedure, Trial Rule 12(B)(6).

We reverse and remand.

▪ The trial court ruled on the Sheriff's[1] motion to dismiss without hearing

1. Iglesias's claim is against the Sheriff in his

evidence; thus, the facts in this case are the facts alleged in Iglesias's complaint and for the purpose of our review, we must accept the alleged facts as true. *Kiyose v. Trustees of Indiana University* (1975), 166 Ind. App. 34, 333 N.E.2d 886.

On February 3, 1979, Iglesias was arrested and charged with public intoxication. On February 5, 1979, in Marion County Municipal Court, Iglesias was fined $7.00 and costs of $43.00. Iglesias was sentenced to the Marion County Jail to "lay out" the fine and costs because he had no money. He was incarcerated in the jail, which was operated by the Sheriff, on February 5, 1979, and remained there through February 14, 1979. The Sheriff's Department released Iglesias at approximately 12:01 A.M. on February 15, 1979. The weather was extremely harsh with snow on the ground. Iglesias was indigent, his clothing was inadequate to protect him from the winter weather, he was unable to speak or understand English, he had no nearby residence, he had made no transportation arrangements, he was mentally confused and did not understand what was happening to him. Iglesias wandered around downtown Indianapolis until early morning. He lost his shoes in the snow and suffered severe frostbite to his feet which required surgery and partial amputation of his feet.

We are faced with a narrow scope of inquiry when we review the dismissal of a complaint pursuant to TR. 12(B)(6).

> [We] emphasize that our decision must rest upon the propriety of granting the Motions to Dismiss. We will not indulge in speculations as to whether [plaintiff] can prove the allegations of its Amended Complaint at a trial on the merits. The salient issue is whether the trial court acted properly in granting the Motions to Dismiss under Rule TR 12(B)(6).

*Mobile Enterprises, Inc. v. Conrad* (1978), Ind.App., 380 N.E.2d 100, 102.

The criteria for determining whether a TR. 12(B)(6) motion to dismiss was properly granted were stated in *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604.

official capacity and not as an individual.

This court has noted that in a typical 12(B)(6) situation, a complaint is not subject to dismissal unless *it appears to a certainty* that the plaintiff would not be entitled to relief under *any set of facts*. The rules do *not* require that the complaint state all the elements of a cause of action. It must be remembered that our new rules are based on so-called notice pleadings in which a plaintiff essentially need only plead the operative facts involved in the litigation. Other means less drastic than dismissal of the action can be used to clarify the theory and basis for the cause of action. Among these are a Motion for a more definite statement under TR. 12(E), our very broad discovery rules, and the pre-trial conference under TR. 16(A)(1). We might note that certain cases from the Court of Appeals apparently state that the plaintiff is required to state in his complaint the theory upon which his claim is based. See, for instance, *Cheatham v. City of Evansville* (1972), [151 Ind.App. 181] 278 N.E.2d 602. Although a statement of the theory may be highly desirable, it is not required. When no evidence has been heard or no affidavits have been submitted, a 12(B)(6) motion should be granted only where it is clear from the *face* of the complaint that under no circumstances could relief be granted. (Original emphasis.)

*Id.* at 230–231, 294 N.E.2d at 606.

■ When applying this standard, we view the complaint in a light favorable to the plaintiff and with every inference drawn in his favor. *Parker v. State* (1980), Ind.App., 400 N.E.2d 796.

Iglesias's complaint alleges the Sheriff was negligent in carrying out his duty to him as a prisoner because the Sheriff failed to use reasonable care under the circumstances when releasing him, thereby exposing him to winter weather which caused his injuries.

■ The tort of negligence is comprised of three elements: (1) a duty owed by the defendant to the plaintiff; (2) the defendant's breach of that duty by his failure to meet the appropriate standard of care; and (3) injuries to the plaintiff caused by the defendant's failure to perform his duty. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701. In this case, we are concerned with the first element, duty, and whether the Sheriff owed Iglesias a duty, *under any circumstances,* to regulate his release to avoid injury.[2]

We have recognized that a sheriff has a duty to exercise reasonable care to preserve his prisoner's health. Thus, in *Johnson v. Bender* (1977), Ind.App., 369 N.E.2d 936, a case where deputies negligently administered a sedative to a prisoner without a doctor's supervision, we stated:

> The law recognizes an obligation on the part of a sheriff to conform his conduct to a certain standard of care for the benefit of his prisoners. The county sheriff, by himself or deputy is required to keep the jail and is responsible for the manner in which it is kept. He is required to take care of the prisoners committed to the county jail, and is responsible for the acts of his deputies. Thus, the sheriff, who is charged with the care and custody of a prisoner, *has a duty to take reasonable precautions under the circumstances to preserve the life, health and safety of the prisoner.* (Emphasis added, citations omitted.)

*Id.* at 939.

*Johnson* is not a unique case and a sheriff's duty to exercise reasonable care toward his prisoners is well recognized in Indiana. In *Magenheimer v. State* (1950), 120 Ind.App. 128, 90 N.E.2d 813, we recognized that a sheriff would be liable for negligently failing to contact the jail physician to provide care for a prisoner who subsequently died of food poisoning. In *Ex Parte Jenkins* (1900), 25 Ind.App. 532, 58 N.E. 560, we applied the rule to a situation

2. On appeal, the Sheriff argues, as he did below, that the issue is whether he has any duty to insure a prisoner's well being after the prisoner has been released. We disagree with this viewpoint. Instead, we accept Iglesias's argument that the issue is whether the Sheriff had a duty to conduct the release of prisoners in a manner which would not endanger them.

of mob violence which resulted in a prisoner's death.

The duty of reasonable care is applicable to custodial authorities other than sheriffs. In *Roberts v. State* (1974), 159 Ind.App. 456, 307 N.E. 501, we reviewed a motion to dismiss a complaint which alleged the guards at the Indiana State Reformatory had negligently fired into a crowd of prisoners and injured innocent prisoners along with protesting prisoners. The issue was whether the various defendants owed the plaintiff-prisoner a public duty, which would have barred his claim, or a private duty which would support his claim. Relying on *Magenheimer, supra,* and *Jenkins, supra,* we recognized the prison officials owed their prisoners a duty of reasonable care.

Given this basis, we recognize the case at bar presents a unique question of law because all the cases which we have discussed *supra,* involved situations where the injured prisoners were in the supervising authority's custody when their injuries occurred. Iglesias's injuries occurred after he was released from Sheriff Well's custody [3] and he argues his injuries were caused by the circumstances of his release. There is little law on this point; however, the authorities which are available lead us to conclude that under some circumstances the Sheriff would owe Iglesias a duty to release him in a manner which would not subject him to unreasonable danger.

The Court of Appeals of New York addressed this issue in *Parvi v. City of Kingston* (1977), 41 N.Y.2d 553, 394 N.Y.S.2d 161, 362 N.E.2d 960. Several drunken individuals including Parvi were observed by two police officers employed by Kingston. The officers questioned the men, who explained they had no place to go. The officers ordered the men into their police car and pursuant to prevailing policy drove them to an abandoned golf course outside the city. The officers left the men there to

"dry out". The golf course bordered the New York State Thruway and only a low guardrail divided the golf course from the road. The drunken men wandered onto the highway and were injured. Parvi filed a claim alleging false imprisonment and negligence on the part of the police officers. Parvi's complaint was dismissed on the city's motion at the close of his case.

The New York Court of Appeals reversed the trial court on both counts of Parvi's complaint. Discussing the negligence issue, the court stated:

[We] confront directly the duty of police officers to persons under the influence of alcohol who are already in their custody. *Id.,* 394 N.Y.S.2d at 164, 362 N.E.2d at 964.

The court went on to hold that a police officer has a duty not to release a helpless person who is in his custody into a perilous situation which the incapacitated person cannot protect himself against. The officer's duty is to exercise reasonable care. The court emphasized that the nature of the prisoner's incapacity, the physical nature of the area and other circumstances bearing on whether the officer has met his duty are factual questions to be resolved by a jury.

A similar situation was addressed in *Wagar v. Hasenkrug* (D.Montana 1980) 486 F.Supp. 47. City police officers of Great Falls, Montana, received a report of a drunken man interfering with traffic. The officers went to the scene and placed Wagar in their car. Wagar did not respond to their questions nor did he appear to understand the questions. Upon returning to the police station, the officers were informed it was against departmental policy to take drunkards into protective custody. The officers were told to put Wagar in the park and let him "sleep it off". The officers had to remove Wagar from the station because he was unable to leave of his own accord. They placed him under a tree in a park which was visible from the police station at

**3.** The issue has not been argued in this case, but Iglesias was in the custody of and released by the Sheriff's deputies. If the deputies were negligent in their official capacities, the Sheriff is responsible for their negligence if it caused Iglesias's injuries. *Johnson, supra; Magenheimer, supra.*

5:30 P.M. on July 9, 1977. Periodically officers checked Wagar's condition, but did nothing to assist him. One such check at approximately 1:50 P.M. the next afternoon revealed Wagar was dead. During the roughly twenty hours Wagar spent in the park, the weather was abnormally cold and it rained. The personal representative of Wagar's estate filed a complaint against the officers in federal court which alleged in relevant part that Wagar had been deprived of his right to life in violation of 42 U.S.C. § 1983. The defendants moved to dismiss the complaint for failure to state a federal claim. The representative's complaint specifically alleged that the police had a duty to take Wagar into protective custody or to get him appropriate treatment and that the officers were negligent or grossly negligent in carrying out that duty.

The district court denied the motion to dismiss and held that an allegation of negligence or gross negligence against an officer who acted under color of state law could support a § 1983 action. The court stated:

> The courts specifically have found that plaintiff administrators of decedents' estates have stated valid § 1983 claims *where as here, the conduct complained of was the defendant's alleged failure to perform a clear duty to the decedents under state law,* and the specific constitutional right alleged to have been infringed was the decedents' Fourteenth Amendment to life. (Citations omitted, emphasis added.)

486 F.Supp. at 53.

Although the personal representative's complaint claimed the officers negligently failed to take Wagar into custody, under the facts presented the district court's ruling was actually *a recognition of the police officers' duty to an incapacitated person who was in their custody and of their duty not to relinquish custody when he was unable to seek medical care or to protect himself from the elements.*

 Applying the reasoning of *Parvi* and *Wagar* to Iglesias's complaint, we find Iglesias has essentially alleged that he was incapacitated when he was released from jail and that therefore, he was unable to protect himself from the elements. He refers to having been mentally confused and unable to understand what was happening due to a language barrier when he was released into severe winter weather. Iglesias alleges that the sheriff knew or should have known of his incapacity, that the sheriff knew or should have known of the severe winter weather, and that the sheriff breached his duty to him by failing to exercise reasonable care in his release. Viewing these allegations in a light most favorable to Iglesias, which we are required to do, *Parker v. State, supra,* we find that a claim for which relief may be granted is stated. A sheriff has a duty not to release *incapacitated* prisoners under circumstances which will subject them to dangers against which they are helpless to defend themselves.

Our decision is not a major departure from prevailing concepts of law enforcement officers' duty to their prisoners. For example, 60 Am.Jur.2d, Sec. 17 *Penal and Correctional Institutions* (1972) states:

> In the performance of his duty to exercise ordinary diligence to keep his prisoners safe and free from harm, an officer having custody of a prisoner, *when he has knowledge of facts from which it might be concluded that the prisoner may harm himself or others* unless preclusive measures are taken, must use reasonable care to prevent such harm. A custodian, like other persons, is charged with knowledge that a man staggering drunk is incapable of exercising ordinary care for his own safety, and *where an officer has knowledge of a prisoner's helpless condition* due to intoxication, *the officer, in performing his duty to exercise ordinary diligence to keep the prisoner safe and free from harm, is bound to deal with him with his condition in mind.* (Footnotes omitted, emphasis added.)

All we are saying is that a police officer must bear an incapacitated prisoner's condition in mind when releasing him and that whether the officer exercised reasonable care toward the prisoner will be judged in light of the prisoner's condition.

The sheriff argues that Iglesias was not forced to leave the jail, that Iglesias could not still have been drunk at the time he was released, and that the prisoners in *Parvi* and *Wagar* were obviously disabled unlike Iglesias. All these issues involve factual questions which are not before us because we are reviewing a TR. 12(B)(6) motion which was granted without evidence being introduced. As the New York court noted in *Parvi,* factual disputes in a negligence action against the police by a prisoner should be resolved by the trier of fact.

We express no opinion on the merits of Iglesias's complaint, but we do find that it states a cause of action for which relief could be granted. The trial court's judgment is reversed and this case remanded to the court below for further action consistent with this opinion.

Judgment reversed and the cause remanded for further action by the trial court.

RATLIFF, P.J., and NEAL, J., concur.