John HAUGH, Plaintiff,

v.

JONES & LAUGHLIN STEEL
CORPORATION, Defendant.

Civ. No. H 82–70.

United States District Court,
N.D. Indiana,
Hammond Division.

March 9, 1984.

Leonard M. Ring, Chicago, Ill., for plaintiff.

Terrance L. Smith, East Chicago, Ind., for defendant.

ORDER

MOODY, District Judge.

This matter is before the Court on the Motion for Judgment Notwithstanding the Verdict and the Motion for New Trial filed by defendant Jones & Laughlin Steel Corporation on February 6, 1984. The Motion for New Trial is GRANTED; the Motion for Judgment Notwithstanding the Verdict is DENIED.

I. Motion for New Trial

A. Facts

The trial in the case of *John Haugh v. Jones & Laughlin Steel Corporation* began on January 23, 1984. It was a diversity case; the plaintiff proceeded on a tort theory for personal injuries. The jury was chosen and the evidence presented. Closing arguments were made on January 26, 1984 and the jury returned its verdict later that day.

On January 30, 1984, the Court received in chambers a letter from Gloria Reed, who served as jury foreman in the *Haugh* trial. The letter, written after the verdict was entered, stated in pertinent part as follows:

> One of the jurors had asked our Marshal (John) the day before—how long they would keep us if we couldn't agree on a verdict? He (John) told us there was no such thing as a hung-jury anymore—we would stay in custody as long as it took to agree on a verdict.

Letter of Gloria Reed, January 26, 1984, at pages 2–3. The letter also described internal dynamics of the jury which need not concern the Court. *See* Rule 606(b), Fed. Rules of Evidence.

In response to this letter, the Court held an in camera hearing with Ms. Reed. A transcript of the hearing was made available to the parties, and appears as Exhibit B to Defendant's Motion for New Trial, filed February 6, 1984. The results of that conversation prompted the Court to schedule a hearing in open court to fully review the Motion for New Trial; the in camera hearing was not, however, considered in the Court's final decision on the Motion.

A hearing on the Motion for New Trial was held on February 22, 1984. The *Haugh* jurors were interrogated in accordance with the limits imposed by Rule 606(b), and the Seventh Circuit decisions of *Wiedemann v. Galiano*, 722 F.2d 335 (7th Cir.1983) and *United States v. Bruscino*, 687 F.2d 938 (7th Cir.1982). The Court restricted its inquiry to the extraneous information or outside influences which might have reached the jury and did not ask whether their deliberations were in fact prejudiced. *Wiedemann, supra,* at 337.

B. Hearing on Motion for New Trial

The testimony of the jurors and John Ashenbremer, a part-time "intermittent deputy" with the Marshal's Service, was solicited through questions posed by the Court. The narrow issue was whether, as alleged in Gloria Reed's letter, the acting marshal had suggested to the jury that there could be no "hung jury" in Indiana, and that the jury would remain in custody until a unanimous verdict was reached.

The jurors' testimony was understandably sketchy. Almost a month had passed since the incidents at issue. None of the jurors had spoken with each other since January 27, 1984, and then the conversation centered on matters which are not a concern here. Further, the jury consisted of eight people. The Marshal is not alleged to have addressed them as a group, but to have made certain statements in the course of conversation. Some jurors were nearby, listening. Others were standing aside with their minds on other matters. All of them were within a few yards of each other during the times in question, yet their testimony paints eight unique scenarios. John Ashenbremer testified to still another version of the events.

The summary presented below attests to the inconclusiveness of "eyewitness" testimony. It is also clear, however, that there was a general sense among the jurors that they must decide the case unanimously else suffer serious consequences. At least four jurors testified with some assurance that such a statement was made to them by a Marshal during the course of the trial.

C. Summarized Testimony

(1) John Ashenbremer was the employee of the U.S. Marshal's Service with primary responsibility for the jury in the case of *Haugh v. Jones & Laughlin*. Throughout the trial, he ushered the jurors in and out of the courtroom, helped them purchase sodas and snacks, and walked them to their cars at the end of the day.

(2) On January 24 or 25, 1984, juror Melissa Hyatt asked Mr. Ashenbremer how long the jurors would be kept in the courthouse after the case was given to the jury for deliberation. Her concern arose from a recent death in her family.

(3) Ms. Hyatt testified that the Marshal responded in words to the effect that it would depend on how long the jury needed to decide the case.

(4) The conversation between Ms. Hyatt and Mr. Ashenbremer was overheard by Gloria Reed. Ms. Reed heard Mr. Ashenbremer reply that the jurors would be "locked up until the verdict."

(5) Juror James Hashew overheard Mr. Ashenbremer state that the jurors must deliberate night and day until there is a unanimous verdict.

(6) Beth Graff believes a similar statement was made prior to the juror's empanelment in the presence of all prospective veniremen.

(7) Laura Cole and Lillian Henderson believed that they would be kept in custody until a verdict was reached, but were unable to identify the source of that information. Juror Rudolph Hill also heard that the jury would be "locked up until the verdict" and that there was "no such thing as a hung jury" but could not attribute the statements.

(8) Delmar Mounts did not specifically recall any of the alleged incidents.

(9) The Marshal, John Ashenbremer, testified that he was asked by one of the jurors in the *Haugh* case how long the jury would be kept in custody should they fail to reach a verdict. Mr. Ashenbremer replied "You just have to keep deliberating." The Marshal did not recall any conversation with a juror regarding the necessity of reaching a verdict.

### D. Legal Standard

 Federal law, not state law, provides the standards for grant or denial of a motion for new trial. *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir.1983). *See also General Foam Fabricators, Inc. v.* *Tenneco Chemicals, Inc.*, 695 F.2d 281, 288 (7th Cir.1982); *Youdan v. Majestic Hotel Mgmt. Corp.*, 125 F.2d 15, 17 (7th Cir. 1942). Rule 59(a), Fed.R.Civ.P. provides in pertinent part:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Rule 59(b) adds that the motion should be served not later than ten (10) days after the entry of judgment. The *Haugh* judgment was entered on January 26, 1984; the Motion for New Trial was filed eight days later, on February 6, 1984.

 The motion for a new trial invokes the discretion of the trial court to determine whether or not the trial was fair to the moving party. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940), *quoted in Wiedemann*, 722 F.2d at 337. Where, as in this case, there is testimony that an outside influence reached the jury, the court must assess the "reasonable possibility" that the jury's decision may have been affected. *United States v. Bruscino*, 687 F.2d 938, 940 (7th Cir.1982).

### E. Conclusion

 The Court need not determine the true sequence of events at the time of the *Haugh* trial. At least four jurors stated unequivocally that a Deputy U.S. Marshal said that there could be no "hung jury" in Indiana. It is unlikely that their testimony was baseless. The Court therefore accepts

that the Deputy U.S. Marshal communicated with one or more members of the jury in words that could reasonably be construed to suggest that the *Haugh* jury must be unanimous or remain in custody indefinitely.

There are several indications of the "reasonable possibility" that this information would influence the jury's deliberations. First, at least three jurors testified that the Marshal's statements were made within one or two days of their deliberations. Those who heard the statements likely remembered them.

Secondly, we know that juror Melissa Hyatt was concerned about a death in her family, and was anxious to be finished with her courtroom responsibilities. Very probably, her approach to the deliberations was influenced by the belief that a unanimous decision must be reached.

Finally, the statement apparently made by the Deputy U.S. Marshal in his capacity as an officer of the Court is tantamount to an *Allen* charge. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The Seventh Circuit has condemned this type of instruction in numerous criminal cases, as "impeding a defendant's right to trial by an impartial jury and to due process." *United States v. Chaney,* 559 F.2d 1094 (7th Cir.1977). *See also United States v. Silvern,* 484 F.2d 879 (7th Cir.1973); *United States v. Brown,* 411 F.2d 930 (7th Cir.1969). Though the constitutional guarantees differ in a civil case, the effect of an *Allen* charge is presumptively the same—it has a potentially coercive effect on jury deliberations. In short, the very nature of the Deputy's statement creates the "reasonable possibility" that the jury was influenced.

### II. Motion for Judgment Notwithstanding the Verdict

In a diversity action, it is settled that state law governs disposition of a motion for judgment notwithstanding the verdict. *F.W. Hempel & Co. v. Metal World,* 721 F.2d 610, 613 (7th Cir.1983). *See Kuziw v. Lake Engineering Co.,* 586 F.2d 33,

35 (7th Cir.1978); *Kudelka v. American Hoist & Derrick Co.,* 541 F.2d 651, 654 (7th Cir.1976). The standard for granting the motion in Indiana is extremely high. Indiana Trial Rules, Rule 50. The court must view only evidence favorable to the nonmoving party. *Bryant-Poff, Inc. v. Hahn,* 453 N.E.2d 1171, 1172 (Ind.1983); *Huff v. Travelers Indemnity,* 266 Ind. 414, 363 N.E.2d 985 (1977); *Johnson v. Bender,* 174 Ind.App. 638, 369 N.E.2d 936 (1977). The trial court may not weigh the evidence. *Long v. Johnson,* 381 N.E.2d 93 (Ind.App. 1978). If the court is convinced that the weight of conflicting evidence preponderates against the jury's verdict, it should order a new trial. *Johnson v. Bender,* 369 N.E.2d at 938.

The most favorable scenario, from the defendant's position, would be substantial evidence weighing against the jury's verdict. The remedy in Indiana law would be a new trial. Since the defendant's Motion for New Trial has been granted on other grounds, the defendant's Motion for Directed Verdict is moot. The issues presented in this latter motion may be reasserted in the course of the new trial.

### III. Summary

It is therefore ORDERED that the defendant's Motion for New Trial is GRANTED, and that the defendant's Motion for Judgment Notwithstanding the Verdict is thereby rendered MOOT. The new trial in the case of *Haugh v. Jones & Laughlin Steel Corporation* will commence in this Courtroom on April 30, 1984.