CONNOLLY, Judge
Appellants brought product-liability actions in state and federal courts, alleging that respondent's forced-air warming device (FAWD) used to maintain patients' normal body temperature during surgery increased the risk of surgical-site infection (SSI). Each party moved to exclude the *19 other party's experts; appellants moved to add a claim for punitive damages; and respondent moved for summary judgment with respect to general causation. The district court granted respondent's motions and denied appellants' motions. Appellants challenge these decisions. Because we see no error in the decisions to exclude appellants' experts, to grant summary judgment to respondent, and to deny appellants' motion for punitive damages, we affirm.
FACTS
In 1987, Scott Augustine, an anesthesiologist and the CEO of Augustine Medical, Inc., invented a FAWD to maintain patients' normal body temperature during surgery. Known as the Bair Hugger, it became the leading warming device in the world. In 2002, Augustine was notified that he was under investigation for Medicare fraud. He resigned from Augustine Medical Inc., which was reorganized as Arizant Healthcare Inc. (Arizant), and Arizant retained the rights to the Bair Hugger.
In 2003, Augustine formed Augustine Biomedical + Design and invented an electric-conduction warming device (ECWD) known as the HotDog. In 2004, he pleaded guilty to Medicare fraud, was fined $2 million, and was prohibited from participating in federal health-care programs for five years.
During those years, he deprecated the Bair Hugger in other countries, leading the UK National Institute for Health and Clinical Excellence to reject his claim that FAWDs increase the risk of SSI and a German court to enjoin him from making false claims that the Bair Hugger increased bacterial contamination in operating rooms.
In 2009, Augustine hired a law firm to promote the use of his ECWD and agreed to work with the law firm as a nontestifying expert for individuals who brought lawsuits against Arizant. The U.S. Food and Drug Administration (FDA) investigated Augustine's claims that the Bair Hugger increased the risk of bacterial contamination and rejected them.
In 2010, Arizant was acquired by respondent 3M Company (3M). Augustine repeatedly and unsuccessfully attempted to induce 3M to purchase the HotDog system, which he claimed reduced the rate of SSI compared to FAWDs such as the Bair Hugger. The FDA warned Augustine that his claim lacked clinical support.
In 2013, the law firm that Augustine had hired began filing lawsuits against Arizant and 3M, claiming that the Bair Hugger was unsafe. In 2014, Augustine funded the McGovern Study,[1] which purported to find an association between the Bair Hugger and increased SSIs. One of the study's authors, a former employee of Augustine, testified that "[t]he study does not establish a causal basis" and characterized it as marketing rather than research.
In 2017, the FDA sent a Safety Alert to healthcare providers "reminding [them] that using thermoregulation devices during surgery, including [FAWDs], ha[s] been demonstrated to result in less bleeding, faster recovery times, and decreased risk of infection for patients"; advising them that "[a]fter a thorough review of available data, [the FDA was] unable to identify a consistently reported association between the use of [FAWDs] and [SSIs]"; and recommending "the use of thermoregulating devices (including [FAWDs] ) for surgical procedures."
*20 To support the claims in their lawsuits, appellants retained three general-causation[2] medical experts, none of whom had previously studied the efficacy of FAWDs or published peer-reviewed articles relevant to the claims in this litigation and none of whom claimed that their general-causation opinions were generally accepted within the relevant scientific community. On respondent's motion, the district court excluded the testimony of appellants' experts and consequently granted respondent summary judgment with respect to general causation. The district court also denied appellants' motion to amend their complaint by adding a claim for punitive damages. Appellants challenge these decisions.
ISSUES
1. Did the district court err in applying Minn. R. Evid. 702 to exclude appellants' experts' opinions?
2. Did the district court err in denying appellants' motion to amend their complaint to add a claim for punitive damages?
ANALYSIS
1. Minn. R. Evid. 702
We start from the basic premise that we are a Frye - Mack state. Doe v. Archdiocese of Saint Paul and Minneapolis , 817 N.W.2d 150, 156 (Minn. 2012) ("The Frye -Mack standard governs the admissibility of expert testimony that involves a novel scientific theory.") (quotation omitted); Goeb v. Tharaldson , 615 N.W.2d 800, 814 (Minn. 2000) (reaffirming Minnesota's adherence to the Frye -Mack general-acceptance standard and rejecting the less-stringent standard set out in Daubert v. Merrell Dow Pharms., Inc ., 509 U.S. 579, 589-90, 113 S.Ct. 2786, 2794-95, 125 L.Ed.2d 469 (1993) ).[3] Consequently, "if the [expert's] opinion or evidence involves novel scientific theory, the proponent must establish that the underlying scientific evidence is generally accepted in the relevant scientific community." Minn. R. Evid. 702 (codifying the Frye -Mack test). The district court concluded that "[appellants] have failed to satisfy the general-acceptance standard under [ Minn. R. Evid. 702 ] and, consequently, their experts' general-causation opinions are inadmissible." This court reviews de novo a decision as to whether underlying scientific evidence is generally accepted in the relevant scientific community. Goeb , 615 N.W.2d at 814.
Appellants argue first that the general-acceptance test is not relevant because "the science used here was not 'novel' " within the meaning of Minn. R. Evid. 702. See State v.Roman Nose , 649 N.W.2d 815, 821 (Minn. 2002) (noting that a scientific technique is novel until "[a] court has reviewed and confirmed [its] general acceptance"). But Minn. R. Evid. 702 pertains to "novel scientific theory," not novel science; the fact that air and particulate movement is not a new science does not *21 mean that appellants' premise, i.e., that FAWDs increase the risk of SSIs, is not a novel scientific theory. Because appellants' scientific theory has not been examined or pronounced on by any court, it is novel. Therefore its proponents, i.e., appellants, "must establish that the underlying scientific evidence is generally accepted in the relevant scientific community." See Minn. R. Evid. 702.
Appellants also argue that Minn. R. Evid. 702 does not require a showing that "proof of the expert's ultimate opinion" is generally accepted; instead, it requires only a "showing that the tools employed by the expert[s] in reaching their opinion [i.e., the experts' methodologies] have gained general acceptance." But Minn. R. Evid. 702 is not restricted to novel methodologies; it refers to "opinion or evidence involv[ing] novel scientific theory" for which "the underlying scientific evidence is generally accepted." Minn. R. Evid. 702 ; see also Frye v. United States , 293 F. 1013, 1014 (D.C. Cir. 1923) ("[T]he thing from which the [expert's scientific] deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."); McDonough v. Allina Health Sys. , 685 N.W.2d 688, 697 (Minn. App. 2004) (excluding as irrelevant the evidence that a stroke victim's drug had been infused at a high rate, i.e., evidence of a methodology, because "appellants still did not produce any evidence showing that it is generally accepted by the medical or science communities that such a high rate of infusion causes strokes").[4] As the district court noted, if the methodology-only approach "were applied to its extreme, a witness would be able to opine that the earth is flat, or [is] the center of the universe, if the person's methodology for arriving at those opinions was generally accepted."
Appellants go on to argue that the district court erred in determining that the relevant scientific community here consists of experts in FAWDs; they argue that the district court should instead have admitted and relied on the evidence provided by appellants' experts, all of whom were "experts within the various aspects of the movement of particles in air." But the thrust of appellants' lawsuit was that a FAWD, namely the Bair Hugger, increased the risk of infection and was less safe than an electric-conduction warming device, namely the HotDog. Thus, the district court did not err in excluding the testimony of appellants' general-causation medical experts, having found that none of them "had studied the efficacy of forced-air warming devices prior to being retained by [appellants]," nor had they "published any peer-reviewed articles relevant to the claims made in this litigation," nor did they "claim that their general-causation opinions are generally accepted within the relevant scientific community."
Six documents that the district court reviewed in reaching its decision clearly demonstrate that the relevant scientific community has not accepted the novel scientific opinion that FAWDs cause an increased risk of SSIs. The first was the 2013 Proceedings of the International Consensus Meeting on Periprosthetic Joint Infection [PJI], which appellants' attorney *22 agreed was "something that both sides can rely upon." The document states:
Delegates from various disciplines including orthopaedic surgery, infectious disease, musculoskeletal pathology, microbiology, anesthesiology, dermatology, nuclear medicine, rheumatology, musculoskeletal radiology, veterinary surgery, pharmacy, and numerous scientists with interest in orthopaedic infections came together to evaluate the available evidence, when present, or reach consensus regarding current practices for management of SSI/PJI.
The process of generating the consensus has spanned over 10 months. Every stone has been turned in search of evidence for these questions, with over 3,500 related publications evaluated.
....
Question 15: Do FAW[Ds] increase the risk of SSI?
Consensus: We recognize the theoretical risk posed by FAW[Ds] and that no studies have shown an increase in SSI related to the use of these devices. We recommend further study but no change to current practice.
Delegate Vote : Agree: 89%, Disagree: 5%, Abstain: 6% (Strong Consensus)
Justification : Recent studies have raised concern about the possibility of bacterial area contamination by FAW[Ds]....
....
... [T]here is no concrete evidence to link the use of FAW[Ds] with SSI/PJI. McGovern et al studied a change of a warming system from forced air to an alternative system in 1,437 patients. ... The [McGovern] authors conceded that the study was observational and may have been affected by other infection prevention measures instituted by the hospital.
The district court also reviewed the 2013 Review by the Association of PeriOperative Registered Nurses , saying that "Our review uncovered no conclusive evidence that the use of [FAWDs] increases the risk of SSI"; a guidance article, "Forced-Air Warming and Surgical Site Infections," published by ECRI , a nonprofit advisor to more than 5,000 healthcare organizations, which says, "[W]e do not believe that the currently available evidence justifies discontinuing the use of FAW during surgery"; the Journal of Bone and Joint Surgery , saying that "[A]ny actual clinical impact [of FAWDs] on surgical site infections must be considered unproven at this time;" the Duke University School of Medicine's Infection Control Outreach Network , saying that, "[N]o adequately powered, properly controlled, statistically significant, reproducible study has been published that demonstrates an increased risk of SSI due to the use of [FAWDs]."
Finally, the district court reviewed the 2017 FDA Safety Alert, which notified health-care providers that
[t]he FDA recently became aware that some health care providers and patients may be avoiding the use of [FAWDs] during surgical procedures due to concerns of a potential increased risk of [SSI]. ... After a thorough review of available data, the FDA has been unable to identify a consistently reported association between the use of forced air thermal regulating systems and [SSI].
Therefore, the FDA continues to recommend the use of thermoregulating devices (including [FAWDs] ) for surgical procedures when clinically warranted.
The district court's review of these six documents provided support for its conclusion that appellants had not shown that FAWDs such as the Bair Hugger were *23 generally considered dangerous by the scientific community.
Appellants presented eight documents purporting to show that their theory that FAWDs are dangerous is generally accepted in the relevant scientific community, but none of these documents even implicitly accepts appellants' theory, and most of them explicitly decline to do so. The McGovern Study itself said that, "This study does not establish a causal basis for this association [between FAWDs and SSIs]". The other documents on which appellants rely similarly provide: (1) "The present study did not evaluate the link between [FAWD] and [SSI] rates...";[5] (2) "[O]ur findings do not establish a direct link between [FAWD] and increased [SSI] rates ...";[6] (3) "Because of the nature of our experiment we are unable to conclude that the use of the [FAWD] ... would actually lead to an increased risk of [SSI]";[7] (4) "Another limitation of our study is that the definitive effects of this excess heat [from FAWDs] on clinical outcomes is presently unknown.";[8] (5) "[T]his study does not show that forced-air warming increases the risk of infection ...";[9] (6) "[W]e did not track hospital infections, nor did we study the association between [forced-air warming] contamination generation/emission and hospital infection rates. ...";[10] and (7) "[W]e are unsure of the exact degree of ventilation disruption that might occur in a working OR during orthopedic surgery... [F]uture research is warranted to characterize the clinical conditions under which forced air warming excess heat results in ventilation disruption during surgery."[11]
These documents provide support for the district court's conclusion that respondent has shown that the relevant scientific community generally rejects appellants' view. "[T]he Frye general-acceptance standard ensures that the persons most qualified to assess scientific validity of a technique have the determinative voice. ... [The] admissibility [of evidence] can be based on scientific merit only if judges defer to practicing scientists' assessments of scientific merit." Goeb , 615 N.W.2d at 813 (citation and quotation omitted). We defer to the assessment of the relevant scientific community rejecting appellants' novel scientific theory and conclude that there is no demonstrated causal relationship between FAWDs and increased risk of SSI, and we affirm the district court's decision to exclude appellants' experts' evidence.
Without their experts' testimony, appellants could not defeat respondent's *24 motion for summary judgment as to general causation.
It is well-settled law in this state that the need for positive expert testimony to establish a causal connection between the defendant's negligent act and the plaintiff's injury or condition depends upon the nature of the question. Where the question involves obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding, there must be expert testimony, based on an adequate factual foundation, that the thing alleged to have caused the result not only might have done so, but in fact did cause it.
Stahlberg v. Moe , 283 Minn. 78, 166 N.W.2d 340, 345 (1969). Therefore, we also affirm the district court's decision to grant summary judgment as to general causation.
2. Punitive Damages
This court reviews the denial of a motion to amend a complaint to add a claim for punitive damages for an abuse of discretion. Bjerke v. Johnson , 727 N.W.2d 183, 196 (Minn. App. 2007), aff'd 742 N.W.2d 660 (Minn. 2007) ; see also M.H. v. Caritas Family Servs ., 488 N.W.2d 282, 290 (Minn. 1992) (reversing this court's reversal of denial of motion to amend complaint to add punitive-damages claim). At the hearing on a motion to amend to add a punitive-damages claim, "if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages." Minn. Stat. § 549.191 (2018). However, the court may consider only admissible, probative, and competent evidence. Berczyk v. Emerson Tool Co ., 291 F.Supp.2d 1004, 1010 (D. Minn. 2003). Punitive damages are allowed "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others," which requires that the defendant "has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others" and "deliberately proceeds to act in conscious or intentional disregard" or "with indifference to the high probability of injury to the rights or safety of others." Minn. Stat. § 549.20, subd. 1 (2018).
To support their motion to amend, appellants relied on the articles quoted in the previous section, but said only that the articles "raised questions" about a possible increased risk of surgical-site infection from the Bair Hugger. The district court did not abuse its discretion in concluding that those articles did not constitute "clear and convincing evidence of either a high probability of injury, ... [or] deliberate disregard of a high probability of injury." The district court also noted that, "While it is undisputed that surgeries have been conducted using the Bair Hugger system for more than 25 years, [appellants] present no evidence that any doctor has ever reported to [respondent] that the Bair Hugger system caused his or her patient to develop a surgical site infection" and that there was no analogous Minnesota case in which leave to add a punitive-damages claim had been permitted.
Finally, the district court rejected appellants' arguments that respondent "failed to validate the safety of the Bair Hugger system" and "willfully suppressed potentially harmful evidence," again finding that these arguments lacked any support, much less clear and convincing evidence. The district court did not abuse its discretion in concluding that appellants had not presented the prima facie case requisite for a punitive-damages claim.
*25 DECISION
The district court's decisions to apply the Frye -Mack general-acceptance standard and exclude the testimony of appellants' experts and to grant respondent's motion for summary judgment as to general causation were without error, and its decision to deny appellants' motion to amend their complaint to seek punitive damages was not an abuse of discretion.
Affirmed.

McGovern, PD et al., Forced-air warming and ultra-clean ventilation do not mix, J. Bone & Joint Surg.-Br. 2011; 93-B(11):1537-44. For this and the other scientific articles cited, we have adopted the citation system used in the parties' submissions to the district court.

"General causation is whether a substance is capable of causing a particular injury or condition in the general population and specific causation is whether a substance caused a particular individual's injury." Norris v. Baxter Healthcare Corp ., 397 F.3d 878, 881 (10th Cir. 2005).

As respondent called to our attention in a filing submitted after oral argument, the supreme court recently declined to depart from the Frye -Mack standard by amending Minn. R. Evid. 702. See Order Promulgating Amendments to Rules of Evidence , No. ADM10-8047, (Minn. Nov. 16, 2018) (concluding that the rules of evidence "must be read in light of the guidance provided by our decisions on admissibility issues, rather than amending the rules to overrule, retreat from, or blur the lines established by that guidance").

Other courts have rejected appellants' view that the Frye general-acceptance criterion applies only to experts' methodologies, not to their opinions. See, e.g. , Cornell v. 360 W. 51st St. Realty, LLC , 22 N.Y.3d 762, 986 N.Y.S.2d 389, 9 N.E.3d 884, 897 (2014) ("[Courts] have measured the reliability of novel hypotheses and theories-not just methodologies-against the Frye standard."); Marso v. Novak , 42 A.D.3d 377, 840 N.Y.S.2d 53, 55 (2007) ("To accept plaintiff's 'methodology-only, ignore-the-conclusion' approach would circumvent the rationale for the Frye doctrine.").

Albrecht M et al., Forced-air warming: a source of airborne contamination in the operating room? Orthopedic Rev. 2009; 1(2):e28

Albrecht M et al., Forced-air warming blowers: An evaluation of filtration adequacy and airborne contamination emissions in the operating room. Am. J. Infect Control 2010; 39:321-28.

Legg A et al., Do forced air patient-warming devices disrupt unidirectional downward airflow? J. Bone & Joint Surg-Br. 2012; 94-B:254-6.

Dasari KR et al., Effect of forced air warming on the performance of operating theatre laminar flow ventilation. Anaesthesia 2012; 67:244-49 (PX35)

Legg A et al., Forced-air patient warming blankets disrupt unidirectional airflow. Bone Joint J. 2013 Mar; 95:407-10.

Reed M et al., Forced-air warming design: evaluation of intake filtration, internal microbial buildup, and airborne-contamination emissions. AANA J. 2013 Aug; 81 (4):275-80.

Belani K et al., Patient warming excess heat: The effects on orthopedic operating room ventilation performance. Anesthesia & Analgesia 2012 (prepublication online) 2013; 117 (2):406-411.